[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 89.]

THE STATE EX REL. RITER, F.K.A. MAYLE, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Riter v. Indus. Comm.*, 2001-Ohio-290.]

*Workers' compensation—Industrial Commission order vacated and matter set for commission hearing—Commission does not abuse its discretion in exercising its continuing jurisdiction, when—Where claimant's interphalangeal joint has no range of motion due to ankylosis, claimant not entitled to compensation for the loss of the whole thumb.*

(No. 99-841—Submitted November 28, 2000—Decided March 7, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-334.

————————————

*Per Curiam.*

{¶ 1} In 1991, appellant-claimant, Velma J. Riter, f.k.a. Mayle, broke her thumb while working for appellee Timken Company. Five surgeries later, it became clear that claimant's interphalangeal ("IP") joint was ankylosed and could not bend. Appellee Industrial Commission of Ohio found an eleven percent permanent partial disability as a result.

{¶ 2} In 1993, claimant sought a scheduled award for loss of use of her thumb under R.C. 4123.57(B). A district hearing officer's award for only one-half, not total, loss prompted appeals that eventually led to a hearing before a commission deputy. He prepared an order awarding claimant compensation for full loss of use. However, when the order was presented to the commission for approval, two of the three commissioners refused to approve it.

{¶ 3} Somehow, on March 3, 1997, the unapproved order was mailed to the parties. When the commission learned of this, it vacated the order and set the matter

for commission hearing.  The commission, splitting two to one, eventually awarded claimant compensation for one-half loss of use only.

{¶ 4} The Court of Appeals for Franklin County, on claimant's petition for a writ of mandamus, upheld the commission's order, and denied the writ.  This cause is now before this court upon an appeal as of right.

{¶ 5} Claimant challenges the commission's jurisdiction to vacate the March 3, 1997 order and the merits of the order that followed.  Finding these challenges to be unpersuasive, we affirm the judgment of the court of appeals.

{¶ 6} Claimant initially argues that the commission lacked jurisdiction to vacate the March 3, 1997 order awarding her compensation for total loss of use. This contention lacks merit.

{¶ 7} Former R.C. 4121.03(A) (now 4121.03[E]) requires that a deputy-issued order must be approved by a commission majority.  The March 3, 1997 order was not so approved, and its issuance was, therefore, a mistake of law sufficient to invoke the commission's continuing jurisdiction under R.C. 4123.52.  *State ex rel. B & C Machine Co. v. Indus. Comm.* (1992), 65 Ohio St.3d 538, 605 N.E.2d 372.

{¶ 8} Contrary to claimant's assertion, the commission's actions did not contravene any time constraints governing reconsideration.  The commission acted *sua sponte* and not in response to any formal request by Timken for reconsideration.

{¶ 9} Claimant also argues that under *State ex rel. Nicholls v. Indus. Comm.* (1998), 81 Ohio St.3d 454, 692 N.E.2d 188, the commission's explanation that the order "was issued in error" was not sufficient to justify continuing jurisdiction absent identification of the perceived error.  This is incorrect.  In this case, the error was apparent from the order's face—it was unnecessary to additionally articulate it in the vacation order that followed.

{¶ 10} Accordingly, the commission did not abuse its discretion in exercising its continuing jurisdiction.

**{¶ 11}** We turn next to the issue of compensation pursuant to R.C. 4123.57(B). A permanent and total loss of use of an enumerated body part warrants a scheduled loss award under R.C. 4123.57(B). Compensation for loss of thumb, for example, warrants sixty weeks of compensation. Loss of a finger ranges from thirty-five weeks for the index to fifteen weeks for the little finger.

**{¶ 12}** The statute also specifies, to some degree, how loss is measured, based on the anatomy of the affected member. For example, proceeding from the base of the finger outward, there is a metacarpophalangeal joint followed by a proximal phalanx. It continues with the proximal interphalangeal ("PIP") joint, the middle phalanx, the distal interphalangeal ("DIP") joint, and finally the third, or distal, phalanx ("DP"). Stedman's Medical Dictionary (26 Ed. 1995) 1030; University of Washington Radiology Webserver (to view "Hand—Posteroanterior [PA] View, Labelled," click here. Michael L. Richardson, "Radiographic Anatomy of the Skeleton: Hand -- Posteroanterior [PA] View, Labeled," University of Washington Department of Radiology [1997], <http://www.rad.washington.edu/RadAnat/HandPALabelled.html> [17 April 2001]).

**{¶ 13}** Consistent with this structure, R.C. 4123.57(B) provides:

"The loss of the third, or distal, phalange of any finger is considered equal to the loss of one-third of the finger.

"The loss of the middle, or second, phalange of any finger is considered equal to the loss of two-thirds of the finger.

"The loss of more than the middle and distal phalanges of any finger is considered equal to the loss of the whole finger."

**{¶ 14}** The thumb has one fewer joint and bone. There is no middle phalanx, and the joint connecting the proximal and distal phalanges is simply called the interphalangeal ("IP") joint. *Id.* As to the thumb, the statute directs:

"The loss of a second, or distal phalange of the thumb is considered equal to the loss of one half of such thumb; the loss of more than one half of such thumb is considered equal to the loss of the whole thumb."

{¶ 15} There is no dispute that claimant's IP joint has no range of motion due to ankylosis. We must determine whether this entitles claimant to compensation for the loss of the whole thumb. We find that it does not.

{¶ 16} First, claimant argues that since (1) loss of the distal phalanx is statutorily equated to one-half loss of the thumb and (2) *more* than one-half loss is construed as a full loss, the loss of the IP joint is an addition that pushes claimant over the threshold. She couples this assertion with a reminder that under R.C. 4123.95, the workers' compensation statutes are to be liberally construed in a claimant's favor.

{¶ 17} Second, claimant points to Commission Memo F.4, which awards compensation for a full finger loss when the PIP joint, or mid knuckle, is ankylosed, and asserts that consistency demands the same award when the thumb's mid knuckle, or IP joint, is fused. Memorandum No. F.4 (Jan. 1, 1989), in Industrial Commission Hearing Officer Manual, reprinted in Fulton, Anderson's 2000 Ohio Workers' Compensation Handbook (6 Ed. 2000) 435. Claimant observes that, with language similar to that concerning the thumb, R.C. 4123.57 directs that loss of more than the distal and middle phalanges of the finger is considered a total finger loss. Thus, if ankylosis of the PIP joint is considered a loss of more than the distal and middle phlanges, and thus a full loss —as Memo F.4 says it is—then ankylosis of the IP joint must be considered the same for the thumb.

{¶ 18} Appellees counter that had the General Assembly intended such an effect, it could have so provided. While true, this ignores the use in R.C. 4123.57(B) of the same "more than" language for thumbs and fingers, and, in the latter instance, the commission has interpreted that language as encompassing the PIP joint.

**{¶ 19}** Appellees' stronger argument lies in the significantly distinct functions of the thumb and fingers. Viewing the hand as a whole, there are two categories of movement of which it is capable: prehensile and nonprehensile. John Napier, Hands (1993 Rev. Ed.). Prehensile movements "are those in which an object, fixed or free, is held by a gripping or pinching action between the digits and the palm." *Id*. at 74. Nonprehensile movements, on the other hand, include "pushing, lifting, tapping and punching movements of the fingers, such as typewriting or working the stops of a musical instrument." *Id*.

**{¶ 20}** The thumb is the key to grasping and gripping. *Id*. at 91. John Napier, one of the world's leading primatologists of the last century, has written:

"A hand without a thumb is at worst nothing but an animated fish-slice, and at best a pair of forceps whose points do not meet properly. Without the thumb, the hand is put back sixty million years in evolution terms to a stage when the thumb had no independent movement and was just another digit. One cannot emphasize enough the importance of finger-thumb opposition for human emergence from a relatively undistinguished primate background." *Id*. at 128-129.

**{¶ 21}** Mechanically, the thumb "is the only digit in the hand that has this freedom to rotate or swivel; it is also unique in that all of its movements can take place independent of those of any of the other fingers; as everyone says, the combination of strength, independence and versatility sets it apart. Because of its unique capabilities * * * the thumb, if need be, can carry on a solo act." Frank R. Wilson, The Hand, at 138-139.

**{¶ 22}** The thumb's special properties derive from two sources: (1) the metacarpal bone, which proceeds from the metacarpophalangeal joint at the thumb's base, down towards the wrist, and (2) the metacarpocarpal joint at the base of the hand near the wrist. As Napier observes:

"The thumb metacarpal is unique. Alone amongst the metacarpals, it articulates by means of a freely movable saddle joint with the carpals. The

remaining carpals are of the plane joint variety which have very small ranges of movement. The metacarpocarpal joint of the thumb, being of the saddle type, is almost as mobile as a ball and socket joint and has the following movements: adduction-abduction, flexion-extension and medial lateral rotation." *Id.* at 66.

{¶ 23} Continuing, he reported:

"The functional advantage of a saddle joint is that the two opposing surfaces and their supporting ligaments are so arranged that the stability of the joint is provided without the need for a cuff of bulky muscles disposed around the joint to control and direct its movement, as is the case for other ball-and-socket joints like the shoulder and the hip. Bulky muscles at the root of the thumb would seriously impair its manipulative skill and flexibility." *Id.*

{¶ 24} These passages demonstrate that the thumb is truly unique and that evaluating it under standards directed at the fingers just doesn't work. The key to the thumb's uniqueness and utility lies in the metacarpal bone and metacarpocarpal joint. Thus, to say that ankylosis of the IP joint makes the thumb totally useless is wrong.

{¶ 25} Claimant last argues that to deny compensation for total loss of use for the thumb's IP joint while awarding it for the PIP joint in the fingers violates equal protection. This fails. The two classes of injured individuals are not similarly situated, which is an equal protection prerequisite. *State ex rel. Nyitray v. Indus. Comm.* (1983), 2 Ohio St.3d 173, 2 OBR 715, 443 N.E.2d 962. Their injuries are different and have different effects on digit use and disability. Claimant has presented no evidence that others with ankylosed IP joints are receiving compensation for full loss of use. Accordingly, her argument is rejected.

{¶ 26} The judgment of the court of appeals is affirmed for the reasons set forth above.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————

*Zwick Law Offices Co., L.P.A.,* and *James P. Proctor*, for appellant.

*Betty D. Montgomery*, Attorney General, and *C. Bradley Howenstein*, Assistant Attorney General, for appellee Industrial Commission.

*Day, Ketterer, Raley, Wright & Rybold, Ltd., Darrell N. Markijohn* and *Aaron E. McQueen*, for appellee Timken Company.

————————————

APPENDIX  (Return to text)

Radiographic Anatomy of the Skeleton

Hand—Posteroanterior (PA) View, Labelled



© 1997 Michel L. Richardson, M.D.
www.rad.washington.edu