[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 203.]

THE STATE EX REL. MEISSNER, APPELLANT, *v.* INDUSTRIAL COMMISSION OF

OHIO, APPELLEE, ET AL.

[Cite as *State ex rel. Meissner v. Indus. Comm*., 2002-Ohio-477.]

*Workers' compensation—R.C. 4123.57(B), scheduled loss compensation for a digit, construed and applied.*

(No. 00-2353—Submitted October 30, 2001—Decided February 6, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-79.

————————————

*Per Curiam*.

{¶ 1} Appellant-claimant, Richard P. Meissner, suffered a hand injury at work, which included a fracture of the tip of the right ring finger. He later moved for scheduled loss compensation for the digit pursuant to R.C. 4123.57(B). Dr. Alan A. Palmer indicated that:

"* * * The injured worker has no active flexion or extension of the DIP joint. Passive range of motion is quite limited but fluid without crepitation. Two-point discrimination on the volar aspect of the digit is unreliably reported. Active range-of-motion of the remainder of the finger is fluid without crepitation. There is a 15 degrees ulnar deviation angle deformity at the DIP and a 15 degrees ulnar [*sic*] (viewed end on) ulnar rotational deformity at the DIP. The MP and PIP fully extend. Active MP flexion is accomplished to 80 degrees and active PIP flexion is accomplished to 95%. The DIP is 55 degrees at rest; there is no active flexion or extension; however, there is limited passive extension."

{¶ 2} Appellee Industrial Commission of Ohio awarded claimant a one-third-loss-of use award, based "on the 4-12-99 report from Dr. Palmer indicating that the distal interphalangeal (DIP) joint of the claimant's right ring finger is ankylosed.

**{¶ 3}** "The Staff Hearing Officer further finds that the District Hearing Officer correctly limited the award to a one-third loss. ORC 4123.57(B) states in pertinent part:

" 'For ankylosis (total stiffness of) * * * which makes any of the fingers * * * or parts (thereof) useless, the same number of weeks apply to the members or parts thereof as given for the loss thereof.'

**{¶ 4}** "The statute further provides:

" 'The loss of the third, or distal, phalange of any finger is considered equal to the loss of one-third of the finger.'

"With his ankylosed DIP joint, the claimant has suffered the loss of use of his third (distal) phalange, equivalent to the amputation of that phalange. As such, the statute provides for a one-third loss of use award under the facts of this case."

**{¶ 5}** Seeking a two-thirds loss of use, claimant filed a complaint in mandamus in the Court of Appeals for Franklin County. That court, finding no abuse of discretion, denied the writ.

**{¶ 6}** This cause is now before this court upon an appeal as of right.

**{¶ 7}** A permanent and total loss of use of a body part enumerated in R.C. 4123.57(B) generates a "scheduled loss" award under that section. The loss of the third or "ring" finger at issue here, for example, generates twenty weeks of compensation. *Id.*

**{¶ 8}** In certain cases, the statute measures loss according to the anatomy of the affected member. For example, loss of part of a finger generates an award commensurate with the impairment of total function caused by the loss. R.C. 4123.57(B) bases awards on the amount of finger lost and on which finger is affected. Preceding downward, the tip of the finger, including the nail, is the distal phalanx ("DP"). It is connected by the distal interphalangeal joint ("DIP") to the middle phalanx. It continues with the proximal interphalangeal joint ("PIP"), or

2

mid-knuckle, the proximal phalanx and, finally, the metacarpophalangeal joint that unites the finger with the hand.  Stedman's Medical Dictionary (26 Ed.1995) 1030.

{¶ 9} Logic dictates that the closer the loss is to the hand, the greater the functional damage.  Consistent with that rationale, R.C. 4123.57(B) provides:

"The loss of the third, or distal, phalange of any finger is considered equal to the loss of one-third of the finger.

"The loss of the middle, or second, phalange of any finger is considered equal to the loss of two-thirds of the finger.

"The loss of more than the middle and distal phalanges of any finger is considered equal to the loss of the whole finger."

{¶ 10} The statute also states:

"For ankylosis (total stiffness * * *) * * * which makes any of the fingers, thumbs, or parts of either useless, the same number of weeks apply to the members or parts thereof as given for the loss thereof."

{¶ 11} The claimant's DIP joint in this case is ankylosed, creating a dispute as to the amount of loss—one-third or two-thirds.  Advocating the latter, claimant puts forth a rather fluid two-part argument that drifts between two premises.  The first is that the DIP ankylosis means that "more than" the DP suffers a loss of use, compelling a two-thirds award.  The second is claimant's proposal that because the middle phalanx is connected to the DIP, it is a "part thereof" rendered useless by the ankylosis, entitling him to a two-thirds award under R.C. 4123.57(B).  We disagree with both propositions.

{¶ 12} As is typical with this kind of case, claimant presents a difficult question.  Two things make analysis particularly cumbersome.  First, the issue is largely medical.  The hand is so complex and so integral to human function that it is often difficult to truly appreciate how much or how little of its abilities are affected when some of its function is lost.

**{¶ 13}** Second, when the statute was written, the only compensable loss was amputation, and when dealing with amputation, R.C. 4123.57(B) is far less opaque. Loss of use without amputation—compensation for which came later (*State ex rel. Walker v. Indus. Comm.* [1979], 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190)—can be more complicated. For example, the middle phalanx—invoked in our controversy—is a single bone and does not bend. It is easy to understand that hand/finger function is impaired when the middle phalanx is amputated. When it is not lost by amputation, however, analysis can be more difficult. The middle phalanx cannot become ankylosed because it does not bend. This complicates matters when dealing with compensation under R.C. 4123.57(B).

**{¶ 14}** At issue is claimant's right ring finger. The joint closest to the fingernail is ankylosed. Claimant cannot bend his finger at that point, but can bend it both at the PIP joint, or mid-knuckle, and at the base of the hand. This raises in our mind the question of whether, from a practical standpoint, claimant has indeed lost two-thirds of the finger's use simply because he cannot bend the tip.

**{¶ 15}** This sort of practical inquiry fueled our decision in *State ex rel. Riter v. Indus. Comm.* (2001), 91 Ohio St.3d 89, 742 N.E.2d 615. At issue was the ankylosed interphalangeal joint ("IP"), or mid-knuckle, of claimant's thumb. Claimant argued that because R.C. 4123.57(B) provided that the loss of more than the distal phalanx equaled full loss, the ankylosed IP joint should be deemed sufficient to compel a full award.

**{¶ 16}** We disagreed. After extensively discussing the thumb's anatomy and function, we wrote:

"[T]he thumb is truly unique and * * * evaluating it under standards directed at the fingers just doesn't work. The key to the thumb's uniqueness and utility lies in the metacarpal bone and the metacarpocarpal joint. Thus, to say that ankylosis of the IP joint makes the thumb totally useless is wrong."

**{¶ 17}** *Amicus curiae*, Ohio Academy of Trial Lawyers, criticizes *Riter* as irreconcilable with *State ex rel. Bellerson v. Devery* (1998), 82 Ohio St.3d 377, 696 N.E.2d 209. The difficulty with this argument is twofold. First, *Bellerson* merely affirmed by entry a court of appeals' judgment. There is no comment or discussion. Second, the court of appeals' decision that gave rise to it is confusing. See *State ex rel. Bellerson v. Devery* (Sept. 28, 1995), Franklin App. No. 94 APD10-1454, unreported. Although the thumb alone was at issue, the court of appeals repeatedly referred to the thumb's PIP joint. The thumb, however, has no PIP joint. It is, therefore, unclear whether the court was evaluating claimant's loss under the thumb provisions or finger provisions. Its precedential or instructional value is thus minimal.

**{¶ 18}** Claimant's assertion that the ankylosed DIP joint means that "more than" the DP is lost so as to compel a greater award has a fundamental flaw. Unlike R.C. 4123.57(B)'s provision for the thumb and for the finger's middle phalanx, the distal phalanx provision does not provide for an "add-on" loss. R.C. 4123.57(B) directs:

"The loss of *more than* the middle and distal phalanges of any finger is considered equal to the loss of the whole finger." (Emphasis added.)

**{¶ 19}** It further provides:

"The loss of the second, or distal, phalange of the thumb is considered equal to the loss of one half of such thumb; the loss of *more than* half of such thumb is considered equal to the loss of the whole thumb." (Emphasis added.)

**{¶ 20}** Conspicuously missing from the statute is any comparable language for the distal phalanx. It says simply that "the loss of the third, or distal, phalange of any finger is considered equal to the loss of one-third of the finger." It says nothing about the loss of "more than" the DP equating to a two-thirds loss. This absence distinguishes our case from *State ex rel. Glower v. Indus. Comm.* (Sept. 1, 1988), Franklin App. No. 86AP-1026, unreported, 1988 WL 92441. There, the

court of appeals held that ankylosis of the mid-knuckle (or PIP) indeed constituted "more than" the loss of the middle and distal phalanges, triggering a statutory entitlement to a full finger loss. No similar statutory trigger exists that transforms a one-third loss into a two-thirds loss.

{¶ 21} Claimant's second argument is similar but focuses instead on the following language from R.C. 4123.57(B):

"For ankylosis (total stiffness * * *) * * * which makes any of the fingers, thumbs, or *parts of* either useless, the same number of weeks apply to the members or parts thereof as given for the loss thereof." (Emphasis added.)

{¶ 22} Claimant reasons that because the middle phalanx and DIP are contiguous, the middle phalanx is a "part of" the DIP. Therefore, if the DIP is lost, the middle phalanx is lost, too, dictating a two-thirds award. We view this position skeptically for two reasons.

{¶ 23} First, claimant misreads the statute. R.C. 4123.57(B) says that loss of use by ankylosis will be paid in the same amount as loss by amputation. It does not say that loss of use of a phalanx will be assumed by the proximity of the phalanx to a nonfunctional joint. In this case, there is no evidence that claimant has lost the use of his middle phalanx.

{¶ 24} Second, claimant's interpretation of the ankylosis provision actually conflicts with the statute. Under claimant's interpretation, if there is a DIP loss of use by ankylosis, the middle phalanx is deemed lost as well. Consequently, if the middle phalanx is lost, claimant is statutorily entitled to a two-thirds award. However, if claimant loses the DIP to amputation, there is no comparable provision that assumes loss of use of the middle phalanx. Thus, the amputee would be limited to a one-third loss. This, of course, offends not only common sense but also the statute, which states that loss of use by ankylosis and loss of use by amputation will be treated the same.

**{¶ 25}** Claimant finally asserts an equal protection argument, alleging that on at least two prior occasions, the commission has awarded a two-thirds loss to claimants with the same amount of loss as his. This argument fails for several reasons. First, these two claimants are identified only by their claim numbers. Comparing the medical conditions of unidentified claimants with Meissner's is impossible. Second, as the commission points out, even if the medical conditions were the same, a wrong decision in an earlier case does not mean that the commission is engaged in a pattern of discriminatory treatment. The commission should not have to perpetuate a mistake—if indeed one was made—in order to avoid an equal protection allegation. Finally, and most important, we do not know what happened to these unidentified orders or if they were appealed. Any perceived error may have been remedied judicially or administratively.

**{¶ 26}** The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————

*Nein Law Offices, Matthew R. Copp* and *James R. Nein*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Dennis L. Hufstader*, Assistant Attorney General, for appellee.

*Philip J. Fulton & Associates*, *Philip J. Fulton* and *William A. Thorman III*, for *amicus curiae* Ohio Academy of Trial Lawyers.

————————————