**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Varney v. Indus. Comm.,* **Slip Opinion No. 2014-Ohio-5510.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-5510

THE STATE EX REL. VARNEY, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Varney v. Indus. Comm.,* **Slip Opinion No. 2014-Ohio-5510.]**

*Workers' compensation—R.C. 4123.57(B)—Total loss of use—Fingers—Standard for determining total loss of use of thumb is not applicable to loss of use of fingers—Proper standard is physician's opinion on impairment or extent of loss—Denial of loss-of-use award is proper when medical evidence does not show loss of use "for all practical purposes."*

(No. 2012-2040— Submitted June 24, 2014—Decided December 18, 2014.)

APPEAL from the Court of Appeals for Franklin County,

No. 11AP-585, 2012-Ohio-4904.

————————————

**Per Curiam**.

{¶ 1} Appellant, Dennis Varney, had four fingers on his left hand amputated in a work-related accident in 1983. Three fingers were completely reattached, and the fourth, his index finger, was partially reattached. The fingers

did not regain their full function, however. The Bureau of Workers' Compensation awarded Varney compensation for the amputation of his fingers. A further claim for one-third loss of use of his index finger was allowed in 1985 and another in 1990 for two-thirds loss of use of his left middle, ring, and little fingers.

{¶ 2}  Almost 20 years later, Varney applied for an award for the total loss of use of his left index, ring, and little fingers. The Industrial Commission denied the claim, concluding that there was no legally valid medical report in the record supporting the loss of the functional use of these fingers. In addition, the issue of how much use was lost had been decided more than 20 years ago.

{¶ 3}  The Tenth District Court of Appeals determined that the commission had applied the wrong legal standard for determining the loss of use of a finger. The court granted Varney's request for a writ of mandamus remanding the matter to the commission to reconsider the issue under the correct standard.

{¶ 4}  For the reasons that follow, we conclude that the commission properly examined the medical evidence as it related to the amount of function remaining in the fingers and denied Varney's request for compensation for the total loss of use of three fingers. Therefore, we reverse the judgment of the court of appeals and deny the writ.

*Facts*

{¶ 5}  In November 1983, the four fingers of Dennis Varney's left hand were amputated in a work-related accident. A hand surgeon successfully reattached the middle, ring, and little fingers, and performed a revision amputation at the distal interphalangeal level of his index finger. His claim was initially allowed for "amputation fingers, left second finger, third finger, fourth finger, fifth finger," and the bureau paid Varney temporary-total-disability

compensation for a period of time following the accident. After three months, he returned to work.

**{¶ 6}** In 1985 and 1990, Varney applied for and was awarded compensation for the partial loss of use of his four fingers. In 1998, he was awarded compensation for one-half loss of use of his hand. In 2010, Varney filed a motion for the total loss of use of his left hand, based on two medical reports of Dr. Nancy Renneker. On January 27, 2011, a staff hearing officer denied the motion, rejecting Dr. Renneker's reports and relying instead on an October 28, 2010 report from Dr. Jeremy J. Burdge, in which Dr. Burdge concluded that Varney did not have a complete loss of use of his hand. The hearing officer also stated that, in the alternative, Varney's request was denied because he did not provide any new evidence showing a basis for an increase above the prior award in 1998 for the loss of use of one-half of his hand. Dr. Renneker's reports were rejected as failing to show any decline in function. Varney's appeal to the commission was refused.

**{¶ 7}** In December 2010 (while his motion for the total loss of use of his hand remained pending), Varney filed a motion for a total loss of use of his index, ring, and little fingers. This motion led to the order that is the basis for Varney's mandamus action. Varney's motion was based on the statement in Dr. Burdge's report that Varney has a 69 percent impairment of his left index finger and on the report of Dr. Renneker, who stated that Varney has the equivalent of a total loss of use of three fingers.

**{¶ 8}** A district hearing officer denied the motion for three reasons. First, there was no valid medical report in the record supporting the loss of the functional use of these fingers. The commission's January 27, 2011 order on total loss of use of the hand rejected Dr. Renneker's report as not showing further loss of function, and thus that report cannot be a basis for the new claim. In support, the hearing officer cited *State ex rel. Zamora v. Indus. Comm.,* 45 Ohio St.3d 17,

3

543 N.E.2d 87 (1989). Second,"[t]he issue of how much use was lost in these fingers was decided more than twenty years ago. No new surgeries, treatments, or other changes in circumstances have been alleged. Therefore, this issue is already decided." Third, even if the motion were to be decided on the merits, it would fail, as Dr. Burdge's February 11, 2011 report was evidence that Varney did not have a total functional loss of use in these three fingers.

{¶ 9} A staff hearing officer affirmed the decision. The commission refused further appeal.

{¶ 10} Varney filed a complaint for a writ of mandamus in the Tenth District Court of Appeals. A magistrate recommended that the court deny the writ because Varney had not demonstrated that for all intents and purposes, he had a total loss of use of these fingers. The magistrate agreed that the commission could not rely on Dr. Renneker's report as evidence because the commission had already rejected her opinion. The magistrate rejected Varney's argument that when analyzing the loss of use of his fingers, the commission should have applied the standard for the loss of use of a thumb articulated in *State ex rel. Rodriguez v. Indus. Comm.*, 10th Dist. Franklin No. 08AP-910, 2009-Ohio-4834. The magistrate noted that a thumb is viewed differently than a finger and is evaluated under different standards, citing *State ex rel. Riter v. Indus. Comm.*, 91 Ohio St.3d 89, 92, 742 N.E.2d 615 (2001) (the thumb is "truly unique" and "evaluating it under standards directed at the fingers just doesn't work").

{¶ 11} In conclusion, the magistrate stated:

The commission had already awarded relator a 50 percent loss of use of his hand and, as the commission indicated, relator did not present evidence demonstrating [that] his loss of use of these specific fingers had increased since the commission's last order. * * * The evidence does not demonstrate that relator has for all

4

intents and purposes sustained a total loss of use of his index, ring
or little fingers and the commission did not abuse its discretion.

*State ex rel. Varney v. Indus. Comm.,* 10th Dist. Franklin No. 11AP-585, 2012-Ohio-4904, ¶ 61.

{¶ 12} But, in a split decision, the court of appeals concluded that the reasoning in *Rodriguez* regarding the loss of use of a thumb did apply to the loss of use of a finger; thus, "R.C. 4123.57(B) requires the commission to determine whether more than two-thirds of a finger is useless and not merely whether the finger is totally useless." *Id.* at ¶ 4. The appellate court determined that the commission had used the wrong standard when analyzing Dr. Burdge's report. The court granted Varney's request for a writ of mandamus and remanded the case to the commission to redetermine his eligibility for the loss of use of his fingers.

{¶ 13} The matter is before the court on the commission's appeal as of right.

{¶ 14} We must determine whether the court of appeals abused its discretion when it applied the standard articulated in *Rodriguez* for the loss of use of a thumb where ankylosis (total stiffness of joint) is proven to the loss of use of a finger.

{¶ 15} R.C. 4123.57(B) authorizes compensation paid to a claimant for the loss of each particular finger according to a statutory schedule. Like the thumb, but unlike other body parts listed in the schedule, R.C. 4123.57(B) also assigns specific values to the loss of a finger depending on how much of the finger is lost, using segments as a measure:

The loss of the third, or distal, phalange of any finger is considered equal to the loss of one-third of the finger.

The loss of the middle, or second, phalange of any finger is considered equal to the loss of two-thirds of the finger.

The loss of more than the middle and distal phalanges of any finger is considered equal to the loss of the whole finger. In no case shall the amount received for more than one finger exceed the amount provided in this schedule for the loss of a hand.

{¶ 16} When the statute was originally written, amputation was the only compensable loss. *State ex rel. Meissner v. Indus. Comm.*, 94 Ohio St.3d 203, 205, 761 N.E.2d 618 (2002). Later, this court recognized the loss of use of a body part without amputation in cases involving paraplegia. *State ex rel. Walker v. Indus. Comm.,* 58 Ohio St.2d 402, 390 N.E.2d 1190 (1979); *State ex rel. Kroger Co. v. Johnson*, 128 Ohio St.3d 243, 2011-Ohio-530, 943 N.E.2d 541, ¶ 10. In *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, 810 N.E.2d 946, the court further clarified that a claimant may qualify for a total loss of use even when the body part retains some residual function. In such cases, a claimant must demonstrate with medical evidence a total loss of use of the body part at issue for all practical purposes. *Id*.

{¶ 17} In *Kroger*, we addressed the standard for determining a total loss of use under R.C. 4123.57(B). In that case, the claimant applied for the loss of use of his right hand based on lack of sufficient circulation in three fingers, leading to stiffness, weakness, and severe temperature-induced pain. Applying the *Alcoa* standard, this court emphasized that "the pivotal question is how much function remains." *Id*. at ¶ 15. The court explained that generally, loss of function may be expressed either numerically, as a percentage of loss, or narratively. *Id.* A narrative opinion of loss of function describes whether "for all practical purposes" the claimant has lost all use of the affected body part. *Id*. at ¶ 17.

**{¶ 18}** In this mandamus action, Varney argued that the commission should have relied upon the more specific standard in *Rodriguez*, not *Alcoa*, when determining the loss of use of his fingers. *Rodriguez* involved a request for compensation for the total loss of use of a thumb based on ankylosis (total stiffness) at the metacarpophalangeal ("MP") joint. Rodriguez alleged that the ankylosis of the joint equated to a loss of more than one-half of his thumb, and under R.C. 4123.57(B), "the loss of more than one-half of such thumb is considered equal to the loss of the whole thumb." *Id*. at ¶ 31.

**{¶ 19}** A staff hearing officer concluded that Rodriguez had proven ankylosis of the MP joint, but found that denial of compensation was not an abuse of discretion because Rodriguez had failed to demonstrate that, as a result, the thumb was entirely useless. *Id*. at ¶ 30. But the court of appeals determined that the commission had not used the correct standard where ankylosis was proven. *Id*. at ¶ 6. *Rodriguez* acknowledged that "R.C. 4123.57(B) requires compensation when a claimant has lost the use of his thumb, and provides that the loss of more than one-half of the thumb is equal to the loss of the whole thumb." *Id.* at ¶ 3. The court emphasized a distinction that does not apply to Varney: "Important for our purposes here, R.C. 4123.57(B) also authorizes payment '[f]or ankylosis (total stiffness of) * * * which makes any of the fingers, thumbs, or parts of either useless.' " *Id*. at ¶ 3. *Rodriguez* concluded that "[t]ogether, these provisions require the commission, *where ankylosis is proven*, to determine whether a claimant has lost more than half the use of a thumb, not just whether a thumb is 'useless,' in order to determine whether a total loss has occurred." (Emphasis added.) *Id*. at ¶ 6.

**{¶ 20}** Although *Rodriguez* involved a thumb, Varney argued to the court of appeals that any distinction between fingers and thumbs was irrelevant for purposes of R.C. 4123.57(B). The court of appeals agreed that "our reasoning in *Rodriguez* applies with equal force to the present case" and that "R.C. 4123.57(B)

requires the commission to determine whether more than two-thirds of a finger is useless and not merely whether the finger is totally useless." 2012-Ohio-4904, ¶ 4.

**{¶ 21}** Varney argues that the appellate court properly implemented the statutory language. The commission maintains that the appellate court misinterpreted R.C. 4123.57(B) and that a physician's opinion of impairment is the appropriate measure for determining loss of use of a body part, not *Rodriguez*.

**{¶ 22}** The plain language of R.C. 4123.57 does not state a numerical measure or threshold for the total loss of use of a finger. The statute contains no provision that requires a finding of total loss based upon the loss of two-thirds of the finger, and this court has no authority to read into the statute a two-thirds numerical measure or threshold. Only when the loss is specific to particular bones or phalanges does the statute provide that the loss may equate to a total loss: "The loss of more than the middle and distal phalanges of any finger is considered equal to the loss of the whole finger." *Id*.

**{¶ 23}** In addition, the *Rodriguez* court specifically tailored its standard to the loss of a thumb due to ankylosis of a particular joint. Dr. Burdge reported that Varney's digits suffer from stiffness, numbness, and sensitivity to cold. Thus, *Rodriguez* is distinguishable based not only on the body part at issue, but also on the type of impairment affecting the body part.

**{¶ 24}** In the absence of a statutory numerical measure for the total loss of a finger, the commission must apply the accepted and mandated method for measuring loss of use—a physician's opinion on impairment or extent of loss. *Kroger*, 128 Ohio St.3d 243, 2011-Ohio-530, 943 N.E.2d 541, ¶ 17. Here, the commission relied on the report of Dr. Burdge that Varney had some functional use of his fingers. And although Dr. Burdge also assessed a percentage of impairment to each finger, "[b]ecause percentage figures alone do not always tell the whole story, a doctor's opinion as to whether 'for all practical purposes' the

claimant has lost all use of the affected member is critically important." *Id*. at ¶ 17. Thus, the commission used the proper standard when analyzing the medical report of Dr. Burdge, and it did not abuse its discretion when it relied on that report as evidence to support its decision to deny compensation for the total loss of use of these fingers.

{¶ 25} The court of appeals abused its discretion when it issued a writ of mandamus directing the commission to apply the standard articulated in *Rodriguez* to the loss of use of a finger. Consequently, we reverse the judgment of the court of appeals and deny the writ.

Judgment reversed<br>and writ denied.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER and O'NEILL, JJ., dissent.

_____

**O'NEILL, J., dissenting.**

{¶ 26} I respectfully dissent. This case should be remanded to the Industrial Commission for application of R.C. 4123.57(B) to determine whether Varney is entitled to compensation for the total loss of use of his fingers. The plain language of the statute states, "The loss of more than the middle and distal phalanges of any finger is considered equal to the loss of the whole finger." R.C. 4123.57(B).

{¶ 27} Applying this statute, this court has already determined that a claimant who shows a loss of use "for all practical purposes" is entitled to a scheduled-loss award. *SER Alcoa Bldg. Prods. v. Indus. Comm.,* 102 Ohio St.3d 341, 2004-Ohio-3166, 810 N.E.2d 946, citing *State ex rel. Gassmann v. Indus. Comm.,* 41 Ohio St.2d 64, 322 N.E.2d 660 (1975), and *State ex rel. Walker v. Indus. Comm.,* 58 Ohio St.2d 402, 390 N.E.2d 1190 (1979). In *Alcoa,* this court

rejected the suggestion that a loss of use "for all practical purposes" meant that the loss must be the absolute equivalent of loss by amputation. *Id.* at ¶ 14. We declared that such a standard is unworkable because it is impossible to satisfy in a nonseverance situation, and *Walker* and *Gassmann* were "unequivocal in their desire to extend scheduled loss benefits beyond amputation." *Id.* at ¶ 11. We reasoned that such a literal interpretation would

> foreclose benefits to the claimant who can raise a mangled arm sufficiently to gesture or point. It would preclude an award to someone with the hand strength to hold a pack of cards or a can of soda, and it would bar—as here—scheduled loss compensation to one with a limb segment of sufficient length to push a car door or tuck a newspaper. Surely, this could not have been the intent of the General Assembly in promulgating R.C. 4123.57(B) or of *Gassman* and *Walker.*

*Id.* at ¶ 11.

{¶ 28} Instead of examining the record to determine whether the medical evidence demonstrated a loss of use "for all practical purposes," the majority opinion mischaracterizes the issue presented. The opinion suggests that the Tenth District applied a new standard based on its decision in *State ex rel. Rodriguez v. Indus. Comm.*, 10th Dist. Franklin No. 08AP-910, 2009-Ohio-4834. That is not what happened here. In *Rodriguez,* the appellate court properly granted a writ of mandamus ordering the commission to reevaluate the claimant's scheduled-loss claim based on the plain language of R.C. 4123.57(B). No new standard was articulated. Varney has a statutory right to have his application for the scheduled loss of use of his fingers evaluated based on the plain language of R.C. 4123.57(B).

**{¶ 29}** The majority opinion also misapplies this court's decision in *State ex rel. Kroger Co. v. Johnson,* 128 Ohio St.3d 243, 2011-Ohio-530, 943 N.E.2d 541. The dispute in *Kroger* was about an equivocal medical opinion, where a percentage of impairment assessment was internally inconsistent with the physician's narrative. There was no dispute regarding the absence of a statutory numerical measure for the total loss of use of a finger. The absence of a statutory numerical measure for the total loss of use of a finger was not relevant in *Kroger* and it is not relevant in this case.

**{¶ 30}** In this case, the medical evidence relied on by the Industrial Commission does not include a determination of whether the Varney has lost use of more than the middle and distal phalanges. As a matter of law, that determination is required by R.C. 4123.57(B). Instead, the evidence relied upon includes a percentage of impairment and a conclusion that Varney has not lost all use of his fingers. The percentage calculation relied upon here is not required by R.C. 4123.57(B) and is therefore irrelevant. And the determination that Varney does not qualify for compensation under R.C. 4123.57(B) because he has not lost all use of his fingers is not the law of Ohio. *Alcoa,* 102 Ohio St.3d 341, 2004-Ohio-3166, 810 N.E.2d 946. I would affirm the decision of the Tenth District Court of Appeals. This case should be remanded to the Industrial Commission for proper consideration under Ohio law. I dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

Philip J. Fulton Law Office and Chelsea J. Fulton, for appellee.

Michael DeWine, Attorney General, and Kevin J. Reis, Assistant Attorney General, for appellant.

_____

11