[Cite as *State ex rel. Spriggs v. Indus. Comm.*, 2019-Ohio-2015.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Brandon M. Spriggs, | : | |
| Relator, | : | |
| v. | : | No. 17AP-519 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on May 23, 2019

*Nager, Romaine & Schneiberg Co. L.P.A., Jerald A. Schneiberg,* and *Scott J. Pullar,* for relator.

*[Dave Yost],* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

McGRATH, J.

{¶ 1} Relator, Brandon M. Spriggs, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("the commission"), to vacate its order which denied a total loss of use of the right fourth finger and ordering the commission to find that he is entitled to a total loss of use award for that finger.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, determined that the commission's finding was supported by some evidence in the record and, as a result, recommended that this court deny relator's request for a writ of mandamus. For the following reasons, we overrule relator's objections and deny the requested writ.

{¶ 3}   In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, the relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).   A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).   However, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987).

{¶ 4}   Relator sustained a work-related injury to his right hand.  Subsequently, he filed a C-86 motion seeking a total loss of use of his right fourth finger.  Relator's request and appeals were denied and relator filed this mandamus action.

{¶ 5}   Relator has filed objections[1] to the magistrate's findings, arguing that the magistrate erred in affirming the commission's determination, as the evidence relied upon does not sufficiently address his inability to use his right fourth finger because it fails to set forth the practical purpose served by the limited hand grasping activities.  Relator contends that there was no competent medical evidence upon which the commission could have relied on to deny the motion seeking loss of use.

{¶ 6}   In this case, the magistrate determined that because there is some evidence in the record to support the commission's denial of relator's application for a total loss of use award, he is not entitled to mandamus relief.   The magistrate found that the February 19, 2016 report of Teresa Kay Larsen, D.O., constitutes some evidence supporting the commission's denial.  Relator argues that Dr. Larsen's report is not some evidence to support the commission's denial of his application because that report does not sufficiently address his inability to use his right fourth finger.

{¶ 7}   R.C. 4123.57(B) authorizes compensation to a claimant for the total loss of a body part.  A claimant may qualify for a total loss of use award even if the body part retains some residual function. *State ex rel. Varney v. Indus. Comm.*, 143 Ohio St.3d 181,

---

[1] Although titled as "objections," in essence, relator has one objection to the magistrate's decision.

2014-Ohio-5510, ¶ 16, citing *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166. In order to qualify for a loss of use award, the "claimant must demonstrate with medical evidence a total loss of use of the body part at issue for all practical purposes." *Id.*, citing *Alcoa*.

{¶ 8} Dr. Larsen conducted an independent medical exam and recorded the following observations during the physical examination:

> Examination of the right hand reveals amputation of the third digit at the distal proximal phalanx. Examination of the fourth digit reveals mild joint thickening at the PIP joint without swelling and a 4.5 cm zig zag surgical scar along the volar finger from the proximal phalanx to the distal middle phlanx. There is mild tenderness along the scar. Range of motion of the MCP joint reveals full flexion to 90 degrees and full extension to 20 degrees. The PIP joint has limited extension to 30 degrees less than neutral with ability to flex to 75 degrees, and the DIP joint has limited extension to 20 degrees with ability to flex to 65 degrees. Motor strength reveals good flexor muscle activation within this range of motion. Sensation is intact to light touch throughout the fourth finger. The thumb is able to easily approximate the fourth digit tip. The nail has a normal appearance. He appears comfortable while sitting, standing, and walking in the office today.

{¶ 9} Dr. Larsen concluded:

> Based on a reasonable degree of medical certainty, it is my opinion that the allowed injury has not resulted in total permanent loss of use of one-third, two-thirds or the entire right fourth finger. Examination of the right fourth finger today reveals that there is permanent partial impairment in range of motion at the DIP joint and PIP joints. While there are flexion contractures noted which limit extension, there is only mildly limited flexion with a residual 45 degrees of motion from flexion to extension at each of the DIP and PIP joints, allowing for some functional although impaired use of the finger in flexion for assistance in hand grasping activities. The MCP joint has full normal range of motion with no impairment.

{¶ 10} There was a subsequent follow-up report from Dr. Nguyen where Dr. Nguyen expressed his professional opinion that relator sustained injuries that resulted in

a total loss of use of his fourth finger. Dr. Nguyen explained that Dr. Larsen's examination had occurred one day after relator had treatment at Dr. Nguyen's office, and Dr. Nguyen expected that relator would perform better the day after treatment. However, given that relator had been receiving active rehabilitation treatment and was still experiencing pain, swelling and lack of range of motion, Dr. Nguyen felt relator had a total loss of use of his right fourth finger.

{¶ 11} Despite the conflicting doctor reports, we agree with the magistrate's finding that Dr. Larsen's report constitutes some evidence. Relator contends that Dr. Larsen's report is medically deficient because she does not explain how "some functional although impaired use of the finger in flexion for assistance in hand grasping activities" constitutes a practical purpose. Relator argues that explaining the practical purpose of any residual functionality is a required part of the medical opinion.

{¶ 12} The magistrate rejected this argument finding that Dr. Larsen did provide a sufficient medical opinion. The magistrate found that Dr. Larsen's opinion that relator could independently move his fourth finger is significant because it affects the ability to make a fist and grasp objects because if that finger cannot move, it adversely affects the ability of the remaining fingers to grasp. The magistrate found that the ability to grasp objects is significant and rejected relator's argument.

{¶ 13} After an examination of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we overrule relator's objections and find the magistrate properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law. The requested writ of mandamus is denied.

*Objections overruled;*
*writ of mandamus denied.*

BROWN and DORRIAN, JJ.

McGRATH, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

The State ex rel. Brandon M. Spriggs,        :

      Relator,                                         :

v.                                                           :                    No. 17AP-519

Industrial Commission of Ohio et al.,        :                    (REGULAR CALENDAR)

      Respondents.                                 :

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on November 20, 2018

---

*Nager, Romaine & Schneiberg Co. L.P.A., Jerald A. Schneiberg,* and *Scott J. Pullar,* for relator.

*Michael DeWine,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 14} Relator, Brandon M. Spriggs, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied a total loss of use of the right fourth finger and ordering the commission to find that he is entitled to a total loss of use award for that finger.

<u>Findings of Fact</u>:

{¶ 15} 1. Relator sustained a work-related injury on February 24, 2015 while working as a machine operator. Relator was injured when his right hand and fingers were caught in the machine he was operating.

{¶ 16} 2. Relator's workers' compensation claim has been allowed for the following conditions:

> Traumatic amputation at PIP joint right third finger; crush injury right hand; dislocation PIP joint right fourth finger; open wound with tendon involvement right fourth finger; posttraumatic stress disorder; tear of the extensor digitorum tendon right fourth finger; retraction of the flexor digitorum profundas and superficialis tendons with tendinopathy right third finger.

{¶ 17} 3. The same day he was injured, Michael P. Binder, M.D., performed the following surgical procedure: "Repair flexor tendon (ulnar slip of sublimis and volar plate, right ring finger and revision amputation with flap, right middle finger)."

{¶ 18} 4. On September 25, 2015, Scott Zimmer, M.D., performed additional surgery which included:

> [One] Right ringer finger flexor tenolysis.
> [Two] Right ring finger open PIP joint release.

{¶ 19} 5. In January 2016, relator filed a C-86 motion asking for a total loss of use of his right fourth finger. In support of that award, relator submitted the December 10, 2015 report of his treating physician Bi T. Nguyen, D.C. In that report, Dr. Nguyen indicated that relator complained of persistent pain in his right hand and fingers which increased during cold weather. Relator indicated he was still struggling to move his fourth finger, limits the use of his right hand fingers to avoid pain, and reported difficulty gripping, especially with smaller objects. Thereafter, Dr. Nguyen provided the following exam findings:

> Visual observation of the right hand and fingers revealed a 35 degrees flexion contracture of the fourth finger. General inspection revealed a partial amputated right third finger at the PIP joint. There were healed convoluted and V-shape scars over the palmar aspect to the right fourth finger. Mild swelling was noted of the fourth finger and the PIP and DIP joints of the fifth finger. Skin was warm to touch. No bruising or erythema was detected. Tenderness was noted of the

third, fourth, and fifth fingers. Hypersensitivity was noted of the distal palmer aspect of the right hand as well as the third and fourth fingers. There was moderate to severe restricted ROM of the fourth finger with 35 degrees flexion contracture at the PIP joint. There was moderate restricted ROM of the fifth finger. The patient was able to flex his amputated third finger at the MCP joint. His thumb and index finger were within normal limits. He is left hand dominant with grip strength measured at 56 kg on the left hand and 8 kg on the right hand.

{¶ 20} Thereafter, Dr. Nguyen opined that relator had suffered a total loss of use of his fourth finger, explaining as follows:

Based on his current subjective complaints and objective findings pertaining to the right hand and fingers, it is my professional opinion that Mr. Spriggs sustained injuries that ultimately required multiple surgeries and has resultantly suffering a total loss of use of the fourth finger. He has a 35 degree flexion contracture of his fourth finger and does not have the ability to actively extend it normally. He also cannot fully flex his fourth finger and has severe pain upon attempted passive motion. I clinically feel that he is incapable of utilizing his fourth finger to perform the functions that he was capable of performing prior to this above injury. In regards to the fifth finger, I feel that Mr. Spriggs needs to follow and complete his currently approved postoperative therapy before we can determine whether a loss of use for this finger is appropriate. I hold my opinion to a reasonable degree of chiropractic certainty.

{¶ 21} 6. An independent medical examination was performed by Teresa Kay Larsen, D.O. In her February 19, 2016 report, Dr. Larsen described the history of relator's injury and treatment and provided the following findings on examination:

On physical examination, this is an alert and cooperative, pleasant male in no distress. His affect is normal in range. He reports his height as 5'8" and weight as 140 pounds. There are multiple tattoos of the bilateral upper extremities noted. Examination of the right hand reveals amputation of the third digit at the distal proximal phalanx. Examination of the fourth digit reveals mild joint thickening at the PIP joint without swelling and a 4.5 cm zig zag surgical scar along the volar finger from the proximal phalanx to the distal middle phalanx. There is mild tenderness along the scar. Range of

motion of the MCP joint reveals full flexion to 90 degrees and full extension to 20 degrees. The PIP joint has limited extension to 30 degrees less than neutral with ability to flex to 75 degrees, and the DIP joint has limited extension to 20 degrees with ability to flex to 65 degrees. Motor strength reveals good flexor muscle activation within this range of motion. Sensation is intact to light touch throughout the fourth finger. The thumb is able to easily approximate the fourth digit tip. The nail has a normal appearance. He appears comfortable while sitting, standing, and walking in the office today.

{¶ 22} Dr. Larsen opined that relator had not suffered a total loss of use of his right fourth finger, explaining:

Based on a reasonable degree of medical certainty, it is my opinion that the allowed injury has not resulted in total permanent loss of use of one-third, two-thirds or the entire right fourth finger. Examination of the right fourth finger today reveals that there is permanent partial impairment in range of motion at the DIP joint and PIP joints. While there are flexion contractures noted which limit extension, there is only mildly limited flexion with a residual 45 degrees of motion from flexion to extension at each of the DIP and PIP joints, allowing for some functional although impaired use of the finger in flexion for assistance in hand grasping activities. The MCP joint has full normal range of motion with no impairment.

{¶ 23} 7. Dr. Nguyen provided a follow-up report dated March 23, 2016 wherein he indicated the additional range of motion noted by Dr. Larsen was likely due to the fact that relator had undergone physical therapy the day before. Dr. Nguyen emphasized that relator has significant pain any time he attempts to use his right hand.

{¶ 24} 8. The record also includes the January 25, 2016 office note of Dr. Zimmer who indicated:

He was doing better before the cold winter. He was getting his fingers down to the base of the palmar area. He got some increased stiffness due to the cold. He [is] still working in therapy. At this juncture, it would be difficult for him to do repetitive tasks that require up to 15 pounds of lifting. Hopefully, as the weather improves any works for a couple more months in motion, he would be able to go back to the light duty job. [sic]

{¶ 25} 9. Relator's request was heard before a district hearing officer ("DHO") on April 1, 2016. The DHO relied on the February 19, 2016 report of Dr. Larsen and the January 25, 2016 office note of Dr. Zimmer, and denied relator's request for a total loss of use award.

{¶ 26} 10. Relator's appeal was heard before a staff hearing officer ("SHO") on May 11, 2016. The SHO relied on the February 19, 2016 report of Dr. Larsen to deny relator's request, explaining as follows:

> This decision is based upon the report of Teresa Larsen, D.O. dated 02/19/2016. It was the opinion of Dr. Larsen that the Injured Worker did not demonstrated [sic] a total loss of use of the right fourth finger. Dr. Larsen conducted an examination and indicated that there were restrictions in motion but did not opine that the Injured Worker was entitled to a total loss of use of the right fourth finger. It was the opinion of Dr. Larsen that the Injured Worker did not demonstrate that he had a total loss of use of the right fourth finger.
>
> The medical evidence in support of the motion is a 12/10/2015 report of Bi Nguyen, D.C. In the 12/10/2015 report Dr. Nguyen indicated that the Injured Worker needs to follow-up and complete his current post operative therapy before it can be determined whether a loss of use of the fourth finger is appropriate. There is a subsequent report from Dr. Nguyen dated 03/23/2016. In the 03/23/2016 report Dr. Nguyen indicates that the Injured Worker has better use of his fourth finger after undergoing therapy which calls into question whether the restrictions are permanent and whether the Injured Worker actually has a permanent loss of use of the right fourth finger for all intents and purposes.
>
> In conclusion, the Staff Hearing Officer relies upon the 02/19/2016 report of Dr. Larsen.

{¶ 27} 11. Relator's appeal was refused by order of the commission mailed June 3, 2016.

{¶ 28} 12. Thereafter, relator filed the instant mandamus action in this court.

<u>Conclusions of Law</u>:

{¶ 29} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 30} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 31} In order to qualify for a loss of use award, relator was required to present medical evidence demonstrating that, for all intents and purposes, he had lost the use of his left upper extremity. *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166.

{¶ 32} In *Alcoa*, at ¶ 10, the court set forth the historical development of scheduled awards for loss of use under R.C. 4123.57(B) as follows:

> Scheduled awards pursuant to R.C. 4123.57(B) compensate for the "loss" of a body member and were originally confined to amputations, with the obvious exceptions of hearing and sight. In the 1970s, two cases—*State ex rel. Gassmann v. Indus. Comm.* (1975), 41 Ohio St.2d 64, 70 O.O.2d 157, 322 N.E.2d 660, and *State ex rel. Walker v. Indus. Comm.* (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190— construed "loss," as similarly used in R.C. 4123.58, to include loss of use without severance. *Gassmann* and *Walker* both involved paraplegics. In sustaining each of their scheduled loss awards, we reasoned that "[f]or all practical purposes,

> relator has lost his legs to the same effect and extent as if they had been amputated or otherwise physically removed." *Gassmann*, 41 Ohio St.2d at 67, 70 O.O.2d 157, 322 N.E.2d 660; *Walker*, 58 Ohio St.2d at 403-404, 12 O.O.3d 347, 390 N.E.2d 1190.

{¶ 33} In *Alcoa*, the claimant, Robert R. Cox, sustained a left arm amputation just below his elbow. Due to continuing hypersensitivity at the amputation site, Cox was prevented from ever wearing a prosthesis. Consequently, Cox filed a motion seeking a scheduled loss of use award for the loss of use of his left arm.

{¶ 34} Through videotape evidence, Alcoa established that Cox could use his remaining left arm to push open a car door and to tuck paper under his arm. In spite of this evidence, the commission granted Cox an award for the loss of use of his left arm.

{¶ 35} Alcoa filed a mandamus action which this court denied. Alcoa appealed as of right to the Supreme Court of Ohio.

{¶ 36} Affirming this court's judgment and upholding the commission's award, the Supreme Court explained, at ¶ 10-15:

> Alcoa urges the most literal interpretation of this rationale and argues that because claimant's arm possesses some residual utility, the standard has not been met. The court of appeals, on the other hand, focused on the opening four words, "for all practical purposes." Using this interpretation, the court of appeals found that some evidence supported the commission's award and upheld it. For the reasons to follow, we affirm that judgment.
>
> Alcoa's interpretation is unworkable because it is impossible to satisfy. *Walker* and *Gassmann* are unequivocal in their desire to extend scheduled loss benefits beyond amputation, yet under Alcoa's interpretation, neither of those claimants would have prevailed. As the court of appeals observed, the ability to use lifeless legs as a lap upon which to rest a book is a function unavailable to one who has had both legs removed, and under an absolute equivalency standard would preclude an award. And this will always be the case in a nonseverance situation. If nothing else, the presence of an otherwise useless limb still acts as a counterweight—and hence an aid to balance—that an amputee lacks. Alcoa's interpretation would foreclose benefits to the claimant who can raise a mangled arm sufficiently to gesture or point. It

would preclude an award to someone with the hand strength to hold a pack of cards or a can of soda, and it would bar—as here—scheduled loss compensation to one with a limb segment of sufficient length to push a car door or tuck a newspaper. Surely, this could not have been the intent of the General Assembly in promulgating R.C. 4123.57(B) or of *Gassmann* and *Walker.*

Pennsylvania defines "loss of use" much as the court of appeals did in the present case, and the observations of its judiciary assist us here. In that state, a scheduled loss award requires the claimant to demonstrate either that the specific bodily member was amputated or that the claimant suffered the permanent loss of use of the injured bodily member for all practical intents and purposes. Discussing that standard, one court has written:

"Generally, the 'all practical intents and purpose' test requires a more crippling injury than the 'industrial use' test in order to bring the case under section 306(c), supra. However, it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes." *Curran v. Walter E. Knipe & Sons, Inc.* (1958), 185 Pa.Super. 540, 547, 138 A.2d 251.

This approach is preferable to Alcoa's absolute equivalency standard. Having so concluded, we further find that some evidence indeed supports the commission's decision. Again, Dr. Perkins stated:

"It is my belief that given the claimant's residual hyper-sensitivity, pain, and tenderness about his left distal forearm, that he is unable to use his left upper limb at all and he should be awarded for the loss of use of the entire left upper limb given his symptoms. He has been given in the past loss of use of the hand, but really he is unable to use a prosthesis since he has had the amputation, so virtually he is without the use of his left upper limb * * *."

{¶ 37} Relator argues the commission's reliance on the report of Dr. Larsen who opined that relator retained some function although impaired use of his right finger to assist with hand grasping activities constitutes an abuse of discretion. Relator argues the

report of his doctor clearly indicates that his ability to use that finger is so limited that it constitutes a total loss of use.

{¶ 38} In her report, Dr. Larsen provided her physical findings on examination. Although Dr. Nguyen opined later that relator's increased range of motion on that particular day was due to physical therapy the preceding day, that does not in any way devalue her findings. Dr. Larsen acknowledged that relator has a permanent partial impairment at the DIP and PIP joints while the MCP joint has full normal range of motion with no impairment. She concluded that relator retained some functional although impaired use of the finger inflection to assist with hand grasping activities.

{¶ 39} At oral argument, counsel argued that Dr. Larsen was required to explain what purpose relator's fourth finger still had and that the ability to grasp was insufficient. However, Dr. Larsen opined that relator could independently move his fourth finger while Dr. Nguyen opined that he could not. The ability to independently move the fourth finger affects the ability to make a fist and grasp objects. If that finger cannot move, it adversely affects the ability of the remaining fingers to grasp. The ability to grasp objects is significant and the magistrate rejects this argument.

{¶ 40} Relator is essentially asking this court to reweigh the evidence and to find the ultimate opinion of Dr. Nguyen to be more persuasive than the ultimate opinion of Dr. Larsen. However, credibility and the weight to be given evidence are clearly within the discretion of the commission as the fact finder and it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's. *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373 (1996).

{¶ 41} Finding the report of Dr. Larsen does constitute some evidence on which the commission could rely, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).