[Cite as *State ex rel. Meilstrup v. Indus. Comm.*, 2017-Ohio-811.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. David G. Meilstrup, | : | |
| Relator, | : | |
| v. | : | No. 16AP-250 |
| Industrial Commission of Ohio and Intigral, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on March 7, 2017

**On brief:** *Nager, Romaine & Schneiberg Co. L.P.A., Jerald A. Schneiberg, Jennifer L. Lawther*, and *Corey J. Kuzma,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator David G. Meilstrup initiated this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his request for a total loss of use award for his left upper extremity and order the commission to find that he is entitled to that award.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the

appended decision, including findings of fact and conclusions of law, recommending this court deny Meilstrup's requested writ of mandamus.

{¶ 3}   Meilstrup has filed objections to the magistrate's decision.  Meilstrup's first objection asserts the magistrate applied the wrong standard in determining that the commission did not abuse its discretion in denying his application for a total loss of use award for his left upper extremity.  In his second objection, Meilstrup contends the magistrate erroneously stated that he did not challenge the commission's reliance on the June 27, 2012 report of John G. Nemunaitis, M.D.  Generally, Meilstrup challenges the magistrate's recommendation that this court deny his requested writ of mandamus. Meilstrup's objections lack merit.

{¶ 4}   Because Meilstrup has filed objections, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).  In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, the relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief.  *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).  A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.  *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).  However, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.  *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987).

{¶ 5}   Here, the magistrate determined that because there is some evidence in the record to support the commission's denial of Meilstrup's application for a total loss of use award, he is not entitled to mandamus relief.  The magistrate found that the November 9, 2012 report of Elizabeth Mease, M.D., constitutes some evidence supporting the commission's denial.  Additionally, the magistrate found that, even if Dr. Mease's report is not considered, Dr. Nemunaitis' report independently constitutes some evidence supporting the commission's denial.  Meilstrup challenges these findings.  According to Meilstrup, Dr. Mease's report is not some evidence to support the commission's denial because it does not address his "remaining practical functionality specific to his left upper

extremity."    (Nov. 3, 2016 Objs. to Mag. Decision at 5.)    Meilstrup argues that Dr. Nemunaitis' report, like Dr. Mease's report, is not some evidence to support the commission's denial of his application because that report does not sufficiently address his inability to use his left upper extremity.

{¶ 6}    We agree with the magistrate's finding that Dr. Mease's report constitutes some evidence.  R.C. 4123.57(B) authorizes compensation to a claimant for the total loss of a body part, such as the total loss of an arm.  To qualify for compensation under R.C. 4123.57(B), the "claimant must demonstrate with medical evidence a total loss of use of the body part at issue for all practical purposes."  *State ex rel. Varney v. Indus. Comm.*, 143 Ohio St.3d 181, 2014-Ohio-5510, ¶ 16, citing *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166.  However, a claimant may qualify for a total loss of use award under R.C. 4123.57(B) even if the body part retains some residual function.  *Id.*, citing *Alcoa.*

{¶ 7}    As the magistrate detailed, the physical findings of Dr. Mease indicate that Meilstrup's left upper extremity retains use beyond residual function.  Dr. Mease's report indicates that Meilstrup had full range of motion of his left shoulder and nearly full range of motion of his left elbow, with some loss of both flexion and extension in his left wrist. In response to an inquiry as to whether Meilstrup's left upper extremity had lost practical functionality, Dr. Mease answered in the negative and specifically opined that Meilstrup had only mild loss of use of his left upper extremity.  Although Dr. Mease did not expressly state that Meilstrup had not lost the use of his left upper extremity "for all practical purposes,"  her report provides evidentiary support for the commission's finding that Meilstrup is not entitled to a total loss of use award for his left upper extremity.  *See, e.g.*, *State ex rel. Holderman v. Indus. Comm.*, 10th Dist. No. 12AP-32, 2012-Ohio-6022 (medical report relied on by the commission in denying loss of use award evidenced compliance with the applicable standard even though the report did not use the phrase "for all practical purposes" in concluding that the injured worker had not sustained a total loss of use).  Because Dr. Mease's report constitutes some evidence in support of the commission's decision, we find it unnecessary to address the issue of whether Dr. Nemunaitis' report also constitutes some evidence.  Therefore, we do not adopt the magistrate's analysis regarding Dr. Nemunaitis' report.

{¶ 8} For these reasons, we overrule Meilstrup's first and second objections insofar as he challenges the magistrate's determination that this court should deny his requested writ of mandamus. To the extent Meilstrup's second objection challenges the magistrate's findings concerning Dr. Nemunaitis' report, that objection is rendered moot.

{¶ 9} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate correctly determined that Meilstrup is not entitled to the requested writ of mandamus. The magistrate properly applied the pertinent law to the salient facts. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, except we do not adopt the magistrate's decision to the extent it analyzes Dr. Nemunaitis' report. We therefore overrule Meilstrup's objections to the magistrate's decision and deny his request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

SADLER and DORRIAN, JJ., concur.

_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. David G. Meilstrup, | : | |
| Relator, | : | |
| v. | : | No. 16AP-250 |
| Industrial Commission of Ohio and Intigral, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on October 20, 2016

*Nager, Romaine & Schneiberg Co. L.P.A., Jerald A. Schneiberg,* and *Corey J. Kuzma,* for relator.

*Michael DeWine,* Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 10} Relator, David G. Meilstrup, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his request for a loss of use award for his left upper extremity, and ordering the commission to find that he is entitled to that award.

**Findings of Fact:**

{¶ 11} 1. Relator sustained a work-related injury on June 7, 2005 and his workers' compensation claim has been allowed for the following conditions:

> Medial epicondylitis, left; lateral epicondylitis, left; neuropathy left ulnar nerve; reflex sympathetic dystrophy left upper limb; psychogenic pain; major depressive disorder, single episode; reflex sympathetic dystrophy right upper limb; food/vomit pneumonitis; acute deep venous thrombosis embolism distal lower extremity left; pulmonary embolism/infarction left.

{¶ 12} 2. Relator has undergone several surgical procedures as a result of his work-related injury.

{¶ 13} 3. Relator also submitted the July 26, 2012 office notes from Dr. Hochman, wherein Dr. Hochman briefly set out the history of relator's injuries and made the following brief physical exam findings:

> He is alert and oriented. He is in no distress. He has the scar in the midline cervical region. He has discoloration, allodynia, and hypersensitivity throughout both upper extremities. He has the swelling throughout the left lower extremity.

{¶ 14} Thereafter, Dr. Hochman set out his plan for relator, stating:

> We have reviewed the history of injury. The patient has been diagnosed with the above pathologies. He had the spinal cord stimulator implanted by Dr. Stanton-Hicks. He completed post-operative rehabilitation. He saw Dr. Machado. He had the revision surgery performed on March 14, 2012. At the time of the surgery, he was intubated. Soon after the surgery, he developed shortness of breath and pneumonia. He was seen at Medina General Hospital and diagnosed with pneumonia. He was transferred to the Cleveland Clinic where he had a video assisted thoracic surgery. He was discharged. He developed swelling throughout his left lower extremity and recurrent shortness of breath. He followed up at the Cleveland Clinic and was diagnosed with DVT associated with pulmonary embolism. More likely than not, the aspiration pneumonia, the DVT, and the pulmonary embolism are flow through conditions. I will address that. The patient will continue with the Coumadin. He is now off the Voltaren. He will continue with the Savella and Lyrica.

He will remain under the care of the psychologist and psychiatrist. He is unable to return to his previous position of employment. A Medco14 and C84 will be updated. He will return in six weeks.

{¶ 15} 4. In September 2012, relator filed a C-86 motion requesting an award for the "loss of use of bilateral upper extremity." In support of his motion, relator included the September 6, 2012 report of his treating physician Todd S. Hochman, M.D., who opined that, for all intents and purposes, relator had lost functional use of his upper extremities, specifically stating:

Despite multiple surgeries, prescription medications, multiple courses of physical therapy, a spinal cord stimulator implantation, and a revision spinal cord stimulator implantation, Mr. Meilstrup continues with significant bilateral upper extremity symptomatology. Mr. Meilstrup's complaints continue to be associated with objective findings on physical examination, consistent with the pathologies recognized in Claim No. 05353480. For a summary of all physical examination findings, please refer to the office notes. At this time, Mr. Meilstrup has substantial upper extremity disability. Mr. Meilstrup has difficulty performing routine daily activities, including personal hygiene. It is my medical opinion that, for all intents and purposes, Mr. David Meilstrup has lost functional use of his upper extremities as a result of the June 7, 2005, work injury, and the pathologies recognized within Claim No. 05-353480.

{¶ 16} 5. An independent medical examination was conducted by Elizabeth Mease, M.D. In her November 9, 2012 report, Dr. Mease set forth the allowed conditions in relator's claim, identified the medical records which she reviewed, and set forth the following relevant findings upon physical examination:

Right arm: allodynia, full range of motion of shoulder, elbow, wrist.

Left arm: surgical scars to left elbow, full range of motion of left shoulder, left elbow flexion to 130 degrees, full extension left elbow, normal supination/pronation left elbow, flexion/extension 50 degrees left wrist, mild limitation in mild flexion contracture both fingers, with passive range of motion, there is full extension of the fingers, mild allodynia.

> Observation: when he was undressing for the examination, he was noted to unbutton his shirt — his wife completed the task for him.
>
> * * *
>
> Current findings reveal * * * allodynia both upper extremities, discoloration left upper extremity, normal range of motion of right shoulder/elbow/wrist, normal range of motion left shoulder, mild limitation left elbow/left wrist, no atrophy of the upper extremity. He has 1 of the clinical criteria for RSD right extremity. He has 2 of the clinical criteria for RSD left upper extremity.

{¶ 17} Thereafter, Dr. Mease was asked whether or not, in her opinion, relator had sustained a total loss of use.  Dr. Mease responded in the negative and explained as follows:

> There is minimal loss of use of the right upper extremity. There is mild loss of use of the left upper extremity. There is no atrophy and his range of motion of the joints of both upper extremities is relatively preserved. He was observed to be able to un-button his shirt, albeit in a slow fashion.

{¶ 18} 6.  The matter was heard before a district hearing officer ("DHO") on January 16, 2013.  At that time, relator's attorney withdrew the request for scheduled loss of use of relator's right upper extremity.  Thereafter, the DHO determined that relator was entitled to a one-half loss of use of his left arm, stating:

> The Injured Worker is awarded a one half loss of use of his left arm. This is based on the 11/09/2012 report of Dr. Mease, the 06/27/2012 report of Dr. Nemunaitis, and the 09/06/2012 report of Dr. Hochman.

{¶ 19} 7. The June 27, 2012 report of John G. Nemunaitis, M.D., referenced in the DHO order, was prepared in response to relator's earlier application for permanent total disability compensation.  At that time, Dr. Nemunaitis made the following findings on physical examination:

> The Injured Worker was alert and oriented. He has normal body build. Functionally, he was reasonably independent today. The severity of his RSD symptoms were not at their

maximum severity today. He described his pain today as a Level 5 out of 10.

The Injured Worker was independent in all his ADL activities today. Although he demonstrated pain with dressing activities, especially on the left. He appeared to have minimal antalgia on the right. He is right-handed. It should be noted that the left upper extremity was mildly red. There was no described bluish discoloration. There was no cyanosis. Skin temperature was mildly cooler on the left as compared to the right. There was no edema of either upper extremity. There was no significant skin dryness, however there was some mild moisture of the left upper extremity. Skin texture appeared to be normal. There was no soft tissue atrophy.

There was no evident joint stiffness of the hand, although there was restricted extension of the left elbow. Nail changes were not remarkable, nor was the hair growth. There was minimal allodynia of the left upper extremity.

In the right upper extremity, the examination did not show any swelling, skin discoloration, temperature changes, edema, pseudomotor changes, or trophic changes on the right. There was no restriction of joint mobility.

Examination of both shoulders showed normal shoulder range of motion. Examination of both wrists and hands, including all fingers and thumbs bilaterally, showed normal joint range of motion.

Elbow range of motion on the right was normal, including flexion, extension, pronation, and supination. Joint range of motion measures on the left elbow was 0 to 120 degrees flexion, and on the right it was 0 to 140 degrees. Supination and pronation on left and right was 80 degrees. There was a scar of the ulnar nerve and tendon surgery on the left. There was no scarring on the right. There was no edema. There was no swelling of either elbow joint. There was no swelling of the forearm bilaterally. There was no swelling of the hands, wrists, or finger joints. Skin color was slightly reddish on the left, with mild mottling. There was no cyanosis. There were no nail trophic changes bilaterally, no tissue atrophy noted. There was slight allodynia on the left, none on the right. The skin temperature was slightly cooler on the left as compared

to the right. Hair growth appeared to be normal bilaterally, as was skin turgor.

The Injured Worker did have a positive Tinel sign over the left ulnar nerve. There was no significant ulnar nerve motor atrophy, but there was approximately 10% weakness of the ulnar muscles on the left. There was no motor weakness on the right. There was no swelling of the wrist, finger, or hand on the right, and no trophic changes.

Sensory examination bilaterally again was intact, except for approximately 10% reduced sensation in a distribution of the ulnar nerve on the left. There was mild grip strength reduction on the left, and no specific motor weakness as part of manual muscle testing bilaterally. Reflexes were normal in both upper extremities, as well as both lower extremities There was no swelling of either elbow joint.

The Injured Worker did demonstrate pain with functional use of the left upper extremity, including mobility of the shoulder, wrist, and elbow. There was a minimal degree of pain in the right upper extremity.

There was no localized tenderness over either elbow. There was no medial epicondylitis tenderness. Range of motion of the wrists, including wrist stress, was normal. There were no clinical findings to suggest current epicondylitis.

{¶ 20} Thereafter, Dr. Nemunaitis opined that relator had a 37 percent whole person impairment as it relates to his reflex sympathetic dystrophy of his left upper limb, medial and lateral epicondylitis, and neuropathy left ulnar nerve.

{¶ 21} 8. The Ohio Bureau of Workers' Compensation appealed and the matter was heard before a staff hearing officer ("SHO") on February 25, 2013. After noting that the request for an award for loss of use of the right upper extremity remained dismissed, the SHO vacated the prior DHO order which had granted relator a one-half loss of use award, and found that he had not presented persuasive evidence to support a total loss of use of his left upper extremity, stating:

Staff Hearing Officer denies the request for the scheduled loss of use of the left upper extremity finding that the weight of the evidence does not support the injured worker's contention that, for all intents and purposes, he has

> sustained a permanent and total loss of use of his left upper extremity as a result of the allowed conditions in this claim. This order is made based on the 11/09/2012 report and opinions of Dr. Mease and is based on the 06/27/2012 report and opinions of Dr. Nemunaitis which were found to be more persuasive with regard to this issue than the opinions expressed by Dr. Hochman in his report dated 09/06/2012.

{¶ 22} 9. Relator's appeal was refused by order of the commission mailed March 19, 2013.

{¶ 23} 10. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 24} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 25} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 27} In order to qualify for a loss of use award, relator was required to present medical evidence demonstrating that, for all intents and purposes, he had lost the use of

his left upper extremity. *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166.

{¶ 28} In *Alcoa*, at ¶ 10, the court set forth the historical development of scheduled awards for loss of use under R.C. 4123.57(B) as follows:

> Scheduled awards pursuant to R.C. 4123.57(B) compensate for the "loss" of a body member and were originally confined to amputations, with the obvious exceptions of hearing and sight. In the 1970s, two cases—*State ex rel. Gassmann v. Indus. Comm.* (1975), 41 Ohio St.2d 64, 70 O.O.2d 157, 322 N.E.2d 660, and *State ex rel. Walker v. Indus. Comm.* (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190—construed "loss," as similarly used in R.C. 4123.58, to include loss of use without severance. *Gassmann* and *Walker* both involved paraplegics. In sustaining each of their scheduled loss awards, we reasoned that "[f]or all practical purposes, relator has lost his legs to the same effect and extent as if they had been amputated or otherwise physically removed." *Gassmann*, 41 Ohio St.2d at 67, 70 O.O.2d 157, 322 N.E.2d 660; *Walker*, 58 Ohio St.2d at 403-404, 12 O.O.3d 347, 390 N.E.2d 1190.

{¶ 29} In *Alcoa*, the claimant, Robert R. Cox, sustained a left arm amputation just below his elbow. Due to continuing hypersensitivity at the amputation site, Cox was prevented from ever wearing a prosthesis. Consequently, Cox filed a motion seeking a scheduled loss of use award for the loss of use of his left arm.

{¶ 30} Through videotape evidence, Alcoa established that Cox could use his remaining left arm to push open a car door and to tuck paper under his arm. In spite of this evidence, the commission granted Cox an award for the loss of use of his left arm.

{¶ 31} Alcoa filed a mandamus action which this court denied. Alcoa appealed as of right to the Supreme Court of Ohio.

{¶ 32} Affirming this court's judgment and upholding the commission's award, the Supreme Court explained, at ¶ 10-15:

> Alcoa urges the most literal interpretation of this rationale and argues that because claimant's arm possesses some residual utility, the standard has not been met. The court of appeals, on the other hand, focused on the opening four words, "for all practical purposes." Using this interpretation, the court of appeals found that some evidence supported the

commission's award and upheld it. For the reasons to follow, we affirm that judgment.

Alcoa's interpretation is unworkable because it is impossible to satisfy. *Walker* and *Gassmann* are unequivocal in their desire to extend scheduled loss benefits beyond amputation, yet under Alcoa's interpretation, neither of those claimants would have prevailed. As the court of appeals observed, the ability to use lifeless legs as a lap upon which to rest a book is a function unavailable to one who has had both legs removed, and under an absolute equivalency standard would preclude an award. And this will always be the case in a nonseverance situation. If nothing else, the presence of an otherwise useless limb still acts as a counterweight—and hence an aid to balance—that an amputee lacks. Alcoa's interpretation would foreclose benefits to the claimant who can raise a mangled arm sufficiently to gesture or point. It would preclude an award to someone with the hand strength to hold a pack of cards or a can of soda, and it would bar—as here—scheduled loss compensation to one with a limb segment of sufficient length to push a car door or tuck a newspaper. Surely, this could not have been the intent of the General Assembly in promulgating R.C. 4123.57(B) or of *Gassmann* and *Walker.*

Pennsylvania defines "loss of use" much as the court of appeals did in the present case, and the observations of its judiciary assist us here. In that state, a scheduled loss award requires the claimant to demonstrate either that the specific bodily member was amputated or that the claimant suffered the permanent loss of use of the injured bodily member for all practical intents and purposes. Discussing that standard, one court has written:

"Generally, the 'all practical intents and purpose' test requires a more crippling injury than the 'industrial use' test in order to bring the case under section 306(c), supra. However, it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes." *Curran v. Walter E. Knipe & Sons, Inc.* (1958), 185 Pa.Super. 540, 547, 138 A.2d 251.

This approach is preferable to Alcoa's absolute equivalency standard. Having so concluded, we further find that some

evidence indeed supports the commission's decision. Again, Dr. Perkins stated:

"It is my belief that given the claimant's residual hyper-sensitivity, pain, and tenderness about his left distal forearm, that he is unable to use his left upper limb at all and he should be awarded for the loss of use of the entire left upper limb given his symptoms. He has been given in the past loss of use of the hand, but really he is unable to use a prosthesis since he has had the amputation, so virtually he is without the use of his left upper limb * * *."

{¶ 33} Relator challenges the commission's reliance on the report of Dr. Mease arguing that Dr. Mease never indicated what he could do with his left upper extremity.

{¶ 34} Dr. Mease's physical findings indicated that relator had full range of motion of his left shoulder and nearly full range of motion of his left elbow, and some loss of both flexion and extension in his left wrist. Thereafter, Dr. Mease was asked to identify and discuss her physical findings and she again indicated that relator had normal range of motion of his left shoulder, mild limitation of his left elbow and left wrist, and no atrophy of his upper extremity. Although relator informed Dr. Mease that he only drives when he has to, that he watches tv, and her noting that his wife helped him unbutton his shirt, Dr. Mease was not required to find that his self-reporting constituted evidence that he was unable to use an arm which retained nearly complete range of motion. This constitutes some evidence on which the commission could rely to find that relator had not presented persuasive evidence that he had sustained a total loss of use of his left upper extremity.

{¶ 35} Even if Dr. Mease's report was removed from evidentiary consideration, the commission also relied on the report of Dr. Nemunaitis based on his evaluation, which occurred one month before relator filed his request for a loss of use award. Dr. Nemunaitis indicated that relator was independent in all of his activities of daily living yet noted that he did demonstrate pain with dressing activities, especially on the left. Dr. Nemunaitis found that relator had normal range of motion in his left shoulder, as well as his left hand. Further, Dr. Nemunaitis found that relator's range of motion of his left elbow was nearly normal and that his supination and pronation was essentially normal. Dr. Nemunaitis did indicate that relator demonstrated pain with functional use

of his left upper extremity, including mobility of the shoulder, wrist, and elbow; however, relator was able to use his left upper extremity.

{¶ 36} Relator does not challenge the commission's reliance on the report of Dr. Nemunaitis. As a result, even if this court were to find that the report of Dr. Mease did not constitute some evidence on which the commission could properly rely to deny him a total loss of use of his left upper extremity, the report of Dr. Nemunaitis does constitute some evidence.

{¶ 37} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied his request for a total loss of use award for his left upper extremity, and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).