[Cite as *State ex rel. Group Mgt. Servs., Inc. v. Indus. Comm.*, 2023-Ohio-4555.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel.<br>Group Management Services, Inc., | : | |
| | : | No. 22AP-240 |
| Relator, | : | (REGULAR CALENDAR) |
| v. | : | |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on December 14, 2023

**On brief:** *Ross, Brittain & Schonberg Co., L.P.A.,*
*Nicholas W. Lanphear*, *Emily Paisley*, and *Meredith L.*
*Ullman* for Group Management Services, Inc.

**On brief:** *Dave Yost*, Attorney General, and *Andrew J. Alatis*
for Industrial Commission of Ohio.

**On brief:** *Green Haines Sgambati Co., L.P.A, Shawn D.*
*Scharf*, and *Charles W. Oldfield* for Kristopher D. Ford.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

EDELSTEIN, J.

{¶ 1} Relator, Group Management Services, Inc. ("GMS"), commenced this original action for a writ of mandamus to compel respondent, Industrial Commission of Ohio ("commission"), to vacate its February 15, 2022 order granting compensation to respondent, Kristopher D. Ford, for permanent partial disability resulting from the loss of use of his left thumb and issue a new order denying his request for compensation.

{¶ 2}   Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto.  Having examined the magistrate's decision, conducted an independent review of the record pursuant to Civ.R. 53, and undertaken due consideration of respondents' objections, we sustain the objections and deny the requested writ of mandamus for the following reasons.

## I.  Background

{¶ 3}   The magistrate's decision provides a detailed description of the medical and procedural history of the underlying claim, but we will briefly summarize the facts pertinent to our discussion.

{¶ 4}   While employed by GMS, Mr. Ford suffered an injury to his left thumb in an August 3, 2019 workplace accident.  (Apr. 18, 2022 Compl. at ¶ 3.)  Following his injury, Mr. Ford filed a claim for workers' compensation benefits, which was recognized for the following conditions: displaced fracture of proximal phalanx of left thumb, closed; post-traumatic arthritis metacarpophalangeal joint left thumb; and instability metacarpophalangeal joint left thumb.  (Compl. at ¶ 4.) Mr. Ford subsequently underwent a series of medical procedures, including surgery on August 30, 2019 performed by Dr. Adrian Butler to repair the fracture of his left thumb and another surgery on November 13, 2020 to fuse his left metacarpophalangeal joint.  Dr. Butler released Mr. Ford back to work after a follow-up appointment on May 6, 2021.  (July 20, 2023 Mag.'s Decision at ¶ 26.)  A May 12, 2021 report by physician assistant, Franchessca Catalano, described Mr. Ford's primary issues as pain and a loss of range of motion in his left thumb.  (June 30, 2022 Stipulation of Evidence at 22-23.)

{¶ 5}   Mr. Ford was then examined by Dr. Randall Hartwig to determine whether he had lost the use of his left thumb.  In his report issued May 30, 2021, Dr. Hartwig stated the left thumb's metacarpophalangeal joint indicated moderate restriction, but that the interphalangeal joint "is totally fused and totally ankylosed, and is therefore deemed as a one-half loss of use of the left thumb."  (Stipulation at 25.)  Following this report, on June 15, 2021, Mr. Ford filed a motion asserting half loss of use of his left thumb due to ankylosis.  (Compl. at ¶ 5.)

{¶ 6}   In response, GMS obtained an independent medical examination from Dr. Manhal Ghanma, who opined that Mr. Ford did not have ankylosis of the left interphalangeal joint and therefore had not sustained a half loss of use of his thumb. (Stipulation at 33-35.)  Dr. Ghanma further stated that Dr. Hartwig's May 30, 2021 report erroneously noted the interphalangeal joint had been surgically fused when, in fact, it had been the metacarpophalangeal joint.  He opined that Dr. Hartwig's report was unreliable because it contained "false and inaccurate information regarding which left thumb joint was fused." (Stipulation at 35.)

{¶ 7}   Dr. Hartwig subsequently issued an addendum to his initial medical report on October 13, 2021, explaining the basis for his error and agreeing with Dr. Ghanma's assessment that the left metacarpophalangeal joint underwent the surgical fusion and became ankylosed, not the interphalangeal joint. Due to the corrected information regarding the fusion of the metacarpophalangeal joint and resulting ankylosis, Dr. Hartwig revised his initial determination that Mr. Ford had suffered a one-half loss of use.  In accordance with the new information and "according to Memo 3[1] of the hearing officer," the doctor stated Mr. Ford had actually lost total use of his left thumb.  (Stipulation at 36.)

{¶ 8}   On November 18, 2021, Dr. Ghanma issued his own addendum following a second examination and concluded that Mr. Ford had sustained only 12 percent left thumb permanent impairment.  (Stipulation at 41.)

{¶ 9}   Having initially applied for workers' compensation for partial loss of use of his thumb, Mr. Ford amended his application to seek an award for the total loss of use of his left thumb.  Following a hearing, a District Hearing Officer ("DHO") found that Mr. Ford had proven the one-half loss of use of his thumb and should be awarded compensation. (Stipulation at 83-84.)  GMS appealed the award.  On appeal, a Staff Hearing Officer ("SHO") reviewed the award and instead found that Mr. Ford had a *total* loss of use of his left thumb due to ankylosis and modified the award for permanent partial disability in

---

[1] As acknowledged by the parties, Dr. Hartwig's mention of "Memo 3" in his report was a reference to the Industrial Commission's Adjudication Memo F3, Ankylosis of Finger Joints (hereinafter "Memo F3"). (Dec. 22, 2022 Supp. Stipulation of Evidence at 7.) The memo states, "The injured worker is entitled to an award for total loss of use of a finger when the hearing officer finds that the injured worker suffers ankylosis of the proximal interphalangeal (PIP) joint of a finger. In other words, ankylosis of the joint below the middle phalange is a loss of more than the middle and distal phalanges of the finger."

accordance with R.C. 4123.57(B). The SHO determined the ankylosis was the result of the fusion of Mr. Ford's left metacarpophalangeal joint and cited Dr. Hartwig's October 13, 2021 addendum report in support of its decision, as well as "all evidence and testimony presented at the hearing" and the legal standard set forth in *State ex rel. Rodriguez v. Indus. Comm.*, 10th Dist. No. 08AP-910, 2009-Ohio-4834. (Stipulation at 85.) After GMS exhausted its avenues for administrative relief, this mandamus action followed.

{¶ 10} On July 20, 2023, the assigned magistrate issued a decision concluding the commission abused its discretion in relying wholly on Dr. Hartwig's October 13, 2021 medical report as the basis for the award. Specifically, the magistrate found the report failed to apply the appropriate legal standard set forth in *Rodriguez* for examining a claim for loss of use of a thumb due to ankylosis. (Mag.'s Decision at ¶ 50. ) The magistrate was persuaded by GMS's argument that Dr. Hartwig improperly drew his opinion from the loss-of-use standard in Memo F3 for fingers other than the thumb, which requires a finding of total loss of use if there is ankylosis of the proximal interphalangeal (PIP) joint of the finger. (Mag.'s Decision at ¶ 44.) The magistrate also determined that physician assistant Catalano's report did not "address the correct legal standard in answering the question of whether Ford has lost more than half the use of his thumb" and thus could not constitute medical evidence supporting the commission's analysis. (Mag.'s Decision at ¶ 51.) Citing *State ex rel. Woodhull v. Indus. Comm.*, 10th Dist. No. 10AP-821, 2011-Ohio-4921, the magistrate concluded that a medical report that relies on an incorrect legal standard may not serve as "some evidence" in support of the commission's determination. (Mag.'s Decision at ¶ 50.) Because Dr. Hartwig's report cited the wrong legal standard and the commission did not rely on any other acceptable medical evidence in support of its decision, the magistrate concluded that the commission abused its discretion in granting the application and recommended we grant the writ and remand the case for further consideration. (Mag.'s Decision at ¶ 53.)

{¶ 11} The commission and Mr. Ford timely filed objections to the magistrate's decision. In general, the objections challenge the magistrate's determination that no medical evidence supported the commission's award for the loss of use of Mr. Ford's left thumb. Mr. Ford and the commission both object to the magistrate's characterization of

Dr. Hartwig's report and assert the magistrate misapplied *Rodriguez* and *Woodhull* to conclude the report must be excluded from the commission's consideration. We agree.

## II. Law and Analysis

{¶ 12} To be entitled to a writ of mandamus, GMS must demonstrate a clear legal right to the relief sought, that the commission has a clear legal duty to provide such relief, and that there is no adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 162-63 (1967). In the context of workers' compensation applications, a writ of mandamus is appropriate if the commission abused its discretion by entering an order unsupported by any evidence. *State ex rel. Kidd v. Indus. Comm.*, 10th Dist. No. 20AP-364, 2022-Ohio-450, ¶ 3, citing *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). This court will not find an abuse of discretion when there is some evidence in the record to support the commission's finding. *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986). Furthermore, the commission is the finder of fact. *State ex rel. Honda of Am. Mfg. Co., Inc. v. Indus. Comm.*, 10th Dist. No. 14AP-82, 2014-Ohio-5245, ¶ 10. If some evidence exists in the record, this court may not "second-guess the commission's evaluation of the evidence." *State ex rel. Black v. Indus. Comm.*, 137 Ohio St.3d 75, 2013-Ohio-4550, ¶ 22.

{¶ 13} Because they are dispositive of this appeal, we first address the commission's first and second objections and Mr. Ford's first objection together. In their objections, respondents argue the magistrate erred in discounting Dr. Hartwig's addendum report as medical evidence because Dr. Hartwig's reference to Memo F3 indicates he applied the wrong legal standard to his consideration of Mr. Ford's loss of use of his thumb.

{¶ 14} The permanent and total loss of use of a listed body part justifies a scheduled loss award under R.C. 4123.57(B), Ohio's partial disability compensation statute. The law sets forth the applicable compensation schedule and, to some degree, the parameters for how loss of use is measured. As relevant here, "R.C. 4123.58(B) requires compensation when a claimant has lost the use of his thumb, and provides that the loss of more than one-half of the thumb is equal to the loss of the whole thumb." *Rodriguez* at ¶ 3. In reviewing claims for total loss of use of the thumb, this court has held that the commission must find the claimant has proven (1) the presence of ankylosis has rendered the thumb, or part of the thumb, useless *and* (2) the loss of use of more than half of the thumb. *Id.* at ¶ 6. In

*Rodriguez*, this court concluded that "[w]hile the SHO determined that the thumb was not entirely useless, the SHO did not expressly find that claimant had lost more than half of its use," and thus vacated the award for full loss of use and remanded the matter to the commission. *Id.* at ¶ 6-7. In contrast to the two-part test for diagnosing loss of use of the thumb, total loss of use in the finger only requires a finding that there is ankylosis of the proximal interphalangeal (PIP) joint. The Supreme Court has previously addressed this distinction and noted that "evaluating [the thumb] under standards directed at the fingers just doesn't work." *State ex rel. Riter v. Indus. Comm.*, 91 Ohio St.3d 89, 93 (2001). Finding that the thumb has significantly different mechanical and structural properties than the other fingers, the court reasoned that the standard now contained in Memo F3 cannot be applied to thumbs. "The key to the thumb's uniqueness and utility lies in the metacarpal bone and metacarpocarpal joint. Thus, to say that ankylosis of the [interphalangeal] joint makes the thumb totally useless is wrong." *Id.* No party disputes that the standard set forth in Memo F3 is inapplicable to the present matter.

{¶ 15} In *Woodhull*, a claimant appealed the denial of her compensation application for the total loss of use of her thumb, claiming, in part, the denial was based on the medical opinion of a doctor who applied the wrong legal standard to his review of her injury. In his report, the doctor provided an opinion on the total and permanent loss of use of the claimant's thumb. *Woodhull*, 2011-Ohio-4921 at ¶ 6. Citing the standard for loss of use set forth in *Rodriguez*, the claimant argued the doctor could have come to a different conclusion had he applied the correct legal test to consider whether her loss of use was greater than half, rather than total. *Id.* at ¶ 6. That, in addition to evidence of ankylosis, could have sufficed to prove she suffered a total loss of use of her thumb as defined under R.C. 4123.58(B). Relying on *State ex rel. Kroger Co. v. Johnson,* 128 Ohio St.3d 243, 2011-Ohio-530, we held:

> To us, the key principle applicable here is the court's remedy in Kroger. Once the court determined that Dr. Funk had used an incorrect legal standard, the court did not eliminate that report as evidence. Rather, the court (1) acknowledged that Dr. Funk might have reached a different conclusion if he had applied the correct standard, (2) granted a writ, and (3) returned the matter to the commission for further consideration. We apply that remedy here. Because Dr.

> George might have reached a different conclusion if he had realized that the loss need only be greater than 50 percent, and not a total loss, we return the matter to the commission for further consideration.

*Id.* at ¶ 10.   We further noted in *Woodhull* that while the DHO and SHO decisions articulated the correct legal standard, "the SHO did not note Dr. George's use of an incorrect legal standard, nor did the SHO expressly conclude that Dr. George's findings support the conclusion that relator has less than a 50-percent loss." *Id.* at ¶ 11.

{¶ 16} The magistrate's decision in this case takes the wrong lesson from *Woodhull*. The magistrate relies on *Woodhull* in concluding that "the report relied upon by the SHO was based on an incorrect legal standard and, therefore, does not constitute some evidence upon which the SHO could rely in reaching its conclusion[.]"  (Mag.'s Decision at ¶ 50.) Furthermore, because the report failed to apply the correct legal standard and expressly address whether Mr. Ford has lost more than half of the use of his thumb, the magistrate contends the commission could not rely on it at all as some evidence supporting the award. (*Id.*)

{¶ 17} We disagree with the magistrate's application of *Woodhall* and *Kroger*.  Both cases stand for the proposition that if the conclusion reached by an expert was affected, or potentially affected, by the misapplication of the law, the appropriate remedy is a remand to the commission.  We specifically noted in *Woodhull* that "[o]nce the court [in *Kroger*] determined that Dr. Funk had used an incorrect legal standard, the court ***did not*** eliminate that report as evidence" but returned the matter to the commission. (Emphasis added.) *Id.* at ¶ 10.  In both cases, doctors assessed the relevant injury against a higher standard than was required. *Id.* at ¶ 15.

{¶ 18} This is not the case in the present matter.  Here, *Rodriguez* instructs the commission to define total loss of the thumb as any loss greater than half.  Dr. Hartwig opined that Mr. Ford has "a total loss of use of the left thumb." (Stipulation at 37.)  This case does not implicate the same concerns as *Kroger* and *Woodhull*, as the ultimate opinion expressed by Dr. Hartwig was in no way affected by the invocation of the wrong legal standard.  A complete loss plainly means a loss greater than half.  This is buoyed by Dr. Hartwig's amended report, which elevated his finding from loss of half to full loss of use of

the left thumb.  Dr. Hartwig did not reduce his assessment, but increased it.  This overly technical interpretation of *Woodhull* would remand the matter so Dr. Hartwig could offer the same opinion in different language.  The logic underlying the remand orders in both *Kroger* and *Woodhull* is the possibility that the medical expert could have reached a different conclusion under a different standard.  Here, where there is no such risk, we do not need additional clarification before the report can be considered as evidence.

{¶ 19} GMS contends that the reference to Memo F3 implies Dr. Hartwig's conclusions were drawn from the belief that an ankylosed interphalangeal joint mandates a finding of total loss, and therefore his conclusions are attributable to the wrong legal standard.  This is not so. Instead, we agree with the respondents' contentions that Dr. Hartwig's report complied with *Rodriguez* and was appropriate medical evidence for the commission to consider.  In his amended report, Dr. Hartwig found (1) the presence of ankylosis of the metacarpophalangeal joint by fusion and (2) a total loss of use of the left thumb. Had Dr. Hartwig relied on Memo F3, he would have based his loss of use conclusion on a finding of ankylosis of the interphalangeal joint, which he did not.  As such, we are similarly unpersuaded that Dr. Hartwig's opinion was affected by the application of the wrong legal standard.

{¶ 20} Finally, we return to the standard itself. The two-part test set forth in *Rodriguez* requires the commission, "where ankylosis is proven, to determine whether a claimant has lost more than half the use of a thumb, not just whether a thumb is 'useless,' in order to determine whether a total loss has occurred."  *Rodriguez* at ¶ 6.  The SHO's February 15, 2022 order concluded that the metacarpophalangeal joint was fused during the November 13, 2020 surgery "resulting in total stiffness at said joint," causing Mr. Ford "to lose more than half the use of his left thumb." (Stipulation at 85.)  Each of the findings required by *Rodriguez* was made by the commission and supported by some evidence in the record.

{¶ 21} Because Dr. Hartwig's report constitutes some evidence in the record, the February 15, 2022 order was supported by some evidence and therefore the commission did not abuse its discretion in granting the award for permanent partial disability.

### III. Disposition

{¶ 22} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate erred in concluding GMS is entitled to the requested writ of mandamus. We agree with the magistrate's recitation of the facts. However, we disagree with the magistrate's conclusions of law. Accordingly, we adopt the magistrate's findings of fact, but not the conclusions of law. We therefore sustain the objections to the magistrate's decision and deny GMS's request for a writ of mandamus.

*Objections sustained*;
*writ of mandamus denied.*

MENTEL and JAMISON, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. | : | |
| Group Management Services, Inc., | : | |
| Relator, | : | |
| v. | : | No. 22AP-240 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on July 20, 2023

*Ross, Brittain & Schonberg Co.*, *Nicholas W. Lanphear*, *Emily Paisley*, and *Meredith L. Ullman*, for relator.

*Dave Yost*, Attorney General, and *Andrew J. Alatis*, for respondent Industrial Commission of Ohio.

*Green Haines Sgambati Co.*, *L.P.A.*, *Shawn D. Scharf*, and *Charles W. Oldfield*, for respondent Kristopher D. Ford.

IN MANDAMUS

**{¶ 23}** Relator, Group Management Services, Inc. ("GMS"), seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to deny the application of respondent Kristopher D. Ford for total loss of use of his left thumb, or, in the alternative, to grant reconsideration to hear and consider GMS's arguments.

**I. Findings of Fact**

{¶ 24} 1. On August 3, 2019, Ford sustained an injury to his thumb in a motor vehicle accident in the course of and arising out of his employment with GMS. Ford was initially diagnosed with a closed displaced fracture of phalanx of left thumb, unspecified phalanx, initial encounter. (Stip. at 1, 10.)

{¶ 25} 2. Ford's workers' compensation claim was allowed for the following conditions: "displaced fracture of proximal phalanx of left thumb, closed; post-traumatic arthritis metacarpophalangeal joint left thumb; instability metacarpophalangeal joint left thumb." (Stip. at 81.)

{¶ 26} 3. On August 30, 2019, Adrian Butler, M.D., performed surgery on Ford to repair the fracture of his left thumb. (Stip. at 2.) On November 13, 2020, Dr. Butler performed another surgical procedure on Ford to fuse his left thumb metacarpophalangeal joint ("MCP joint"). (Stip. at 5.) At a follow-up appointment on Ford's surgical procedure on May 6, 2021, Dr. Butler noted Ford's report of occasional pain and clicking in his left thumb and released Ford back to work without restrictions. (Stip. at 17-19.)

{¶ 27} 4. In a report dated May 12, 2021, Franchessca L. Catalano, PA-C, noted that Ford's "primary problem is pain, a loss of range of motion located in the [left thumb]." (Stip. at 22.)

{¶ 28} 5. Ford was examined on May 28, 2021 by Randall J. Hartwig, D.O., for the purpose of determining loss of use of Ford's left thumb. (Stip. at 24-26.) In a report dated May 30, 2021, Dr. Hartwig noted Ford's allowed conditions and stated that he reviewed Dr. Butler's November 13, 2020 operative report. In his examination, Dr. Hartwig stated with regard to the MCP joint the following:

> Further examination of the left thumb area demonstrated at the metacarpal phalangeal joint he did achieve extension within a normal limits range. The flexion at the metacarpal phalangeal joint was restricted at approximately 45 degrees; however, this did demonstrate fair motion to flexion of the metacarpal phalangeal joint. Therefore, this examiner cannot indicate that this joint itself is a loss of use secondary to any type of ankylosis.

(Stip. at 25.) Dr. Hartwig stated the following with regard to the interphalangeal joint ("IP joint") of Ford's left thumb:

> Examination of the distal phalanx of the left thumb demonstrated the left thumb to be ankylosed and it is fused at a 10-degree flexed position. He had the inability to perform any extension past this 10-degree flexed position, and the inability to perform any flexion past the 10-degree fixed flexed position. Therefore, this left thumb at the interphalangeal joint is totally fused and totally ankylosed, and is therefore deemed as a one-half loss of use of the left thumb according to the AMA guidelines.

(Stip. at 25.) Based on his finding that the IP joint was "totally ankylosed secondary to fusion with no motion at all," Dr. Hartwig opined that Ford "has incurred a one-half loss of use of the left thumb as a direct result of the above listed industrial injury." (Stip. at 25.)

{¶ 29} 6. On June 15, 2021, Ford filed a C-86 motion requesting one-half loss of use of left thumb due to ankylosis pursuant to R.C. 4123.57(B). (Stip. at 80.)

{¶ 30} 7. Dr. Butler again examined Ford on June 17, 2021 to follow-up from his prior surgical procedure. Ford reported to Dr. Butler that he experienced "occasional pain at night at the joint below his fusion." (Stip. at 27.) Dr. Butler noted Ford had a "stable fusion mass" and had "some mild tenderness palpation of his radial and ulnar joint lines of the MCP joint but stable to stress examination." (Stip. at 29.) Dr. Butler found that Ford was at maximum medical improvement as of the date of that examination. (Stip. at 29.)

{¶ 31} 8. On August 26, 2021, Manhal A. Ghanma, M.D., performed an independent medical examination of Ford and produced a report on the same date. In the report, Dr. Ghanma opined that Ford had movement of his IP joint of his left thumb and did not have any ankylosis of the IP joint. As a result, Dr. Ghanma stated that Ford had not sustained a half loss of use of his thumb due to ankylosis of the IP joint as a direct and proximate result of the work-related incident on August 3, 2019 and the associated allowed conditions. Dr. Ghanma stated that "Dr. Hartwig's report is completely inaccurate in that he is alleging that the thumb is ankylosed at the IP joint whereas the metacarpophalangeal fusion was performed at the MCP joint of the left thumb and not the IP joint. Accordingly, his report is not reliable because it contains false and inaccurate information regarding which left thumb joint was fused." (Stip. at 35.)

{¶ 32} 9. On October 13, 2021, Dr. Hartwig completed an addendum to his May 30, 2021 report. Noting that he reviewed Dr. Ghanma's report, Dr. Hartwig stated the following:

> [W]hen I dictated this report I was arrant [sic] in indicating that the interphalangeal joint was fused. I did not find any motion in this joint and therefore is why I should have just indicated there was no motion, or it appeared to be ankylosed, and I should not have said "fused." That was my error.
>
> Also, at the metacarpal phalangeal joint it was my error in judgement indicating that there was motion at this joint; however, the motion that I perceived must have been from the metacarpal-carpal junction, causing the thumb to go back and forth.
>
> Therefore, I do agree with Dr. Ghanma that the client did have a total fusion of the metacarpalphalangeal joint. Therefore, according to Memo 3 of the hearing officer, if this joint is ankylosed then it would actually render the entire distal portion of the thumb of any purposeful or functional use as well.

(Stip. at 36.) Having reviewed Dr. Ghanma's report, Dr. Hartwig stated that "taking into consideration the new documentation, this would indicate that Mr. Ford does have an ankylosis of the metacarpal phalangeal joint by fusion, and therefore this would render the distal portions of this thumb to be deemed loss of use as well." (Stip. at 37.) Accordingly, Dr. Hartwig stated that "[b]ased on the history, as well as the new medical documentation reviewed, it is my opinion that Mr. Kristopher Ford has a total loss of use of the left thumb as a result of the above listed industrial injury." (Stip. at 37.)

{¶ 33} 10. In an order mailed on October 23, 2021, a commission district hearing officer ("DHO") stated that the October 21, 2021 hearing was continued because Ford's representative clarified at the hearing that Ford was requesting total loss of use for the left thumb rather than one-half loss of use.

{¶ 34} 11. On November 18, 2021, Dr. Ghanma performed a second independent medical examination of Ford and produced a report on the same date. In response to the question "[d]id the claimant sustain ankylosis of his left thumb metacarpophalangeal joint," Dr. Ghanma stated, "Yes, Mr. Ford underwent a fusion of his left thumb metacarpophalangeal joint on the surgery date of November 13, 2020." (Stip. at 40.)

Dr. Ghanma opined that Ford had a 12 percent left thumb permanent impairment, and as a result had not sustained more than one-half loss of use of his thumb. (Stip. at 40-41.)

{¶ 35} 12. On December 10, 2021, a DHO heard the issue of Ford's June 15, 2021 C-86 motion. In an order mailed December 14, 2021, the DHO granted the C-86 motion based on the DHO's finding that Ford met his burden of proving the ankylosis of his first finger was at the thumb IP joint resulting in a one-half loss of use of the left thumb. The DHO based this finding on the November 13, 2020 operative report of Dr. Butler, the May 28, 2021 report by Dr. Hartwig, and the October 13, 2021 addendum by Dr. Hartwig. The DHO ordered Ford to be granted payment for one-half loss of use of the left first finger by ankylosis.

{¶ 36} 13. GMS's appeal from the DHO's December 10, 2021 order was heard before a commission staff hearing officer ("SHO") on February 10, 2022. In an order mailed February 15, 2022, the SHO modified the DHO's order, granting Ford's June 15, 2021 C-86 motion to the extent specified in the order. The SHO found Ford had a total loss of use of the left thumb due to ankylosis. Further, the SHO found Ford's MCP joint was fused on November 13, 2020 resulting in total stiffness at said joint, and thereby causing Ford to lose more than half the use of his left thumb. The SHO based this finding on Dr. Hartwig's October 13, 2021 addendum, *State ex rel. Rodriguez v. Indus. Comm.*, 10th Dist. No. 08AP-910, 2009-Ohio-4834, and a "visual inspection of [Ford's] left hand and thumb, as well as all evidence and testimony presented at the hearing." (Stip. at 85.) The SHO ordered that Ford be granted compensation for permanent partial disability for total loss of use of the left thumb pursuant to R.C. 4123.57(B).

{¶ 37} 14. GMS appealed the SHO's order to the commission, which refused the appeal in an order mailed March 8, 2022. (Stip. at 87.)

{¶ 38} 15. GMS filed a complaint in mandamus in the instant case on April 18, 2022.

## II. Discussion and Conclusions of Law

{¶ 39} GMS seeks a writ of mandamus ordering the commission to deny Ford's request for total loss of use of his left thumb or, in the alternative, a limited writ of mandamus ordering the commission to grant reconsideration.

## A. Requirements for Mandamus

{¶ 40} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). Where the commission's determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

{¶ 41} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Where the commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. West. v. Indus. Comm.*, 74 Ohio St.3d 354, 356 (1996), citing *Burley*. However, the commission cannot rely on a medical opinion that is equivocal or internally inconsistent. *George* at ¶ 11. *See State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445, 449 (1994).

## B. Loss of Use Claims Under R.C. 4123.57(B)

{¶ 42} "R.C. 4123.57(B) provides for scheduled-loss compensation that is paid to an injured worker for the loss of a body part as listed in the schedule." *State ex rel. Coleman v. Indus. Comm. of Ohio*, 136 Ohio St.3d 77, 2013-Ohio-2406, ¶ 16. In pertinent part, R.C. 4123.57(B) provides:

> In cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage * * * and shall be paid in installments according to the following schedule:
>
> For the loss of a first finger, commonly known as a thumb, sixty weeks.
>
> * * *

> The loss of a second, or distal, phalange of the thumb is considered equal to the loss of one half of such thumb; the loss of more than one half of such thumb is considered equal to the loss of the whole thumb.
>
> The loss of the third, or distal, phalange of any finger is considered equal to the loss of one-third of the finger.
>
> The loss of the middle, or second, phalange of any finger is considered equal to the loss of two-thirds of the finger.
>
> The loss of more than the middle and distal phalanges of any finger is considered equal to the loss of the whole finger. In no case shall the amount received for more than one finger exceed the amount provided in this schedule for the loss of a hand.
>
> * * *
>
> For ankylosis (total stiffness of) or contractures (due to scars or injuries) which makes any of the fingers, thumbs, or parts of either useless, the same number of weeks apply to the members or parts thereof as given for the loss thereof.

R.C. 4123.57(B). Thus, the statute "specifies, to some degree, how loss is measured, based on the anatomy of the affected member." *State ex rel. Riter v. Indus. Comm.*, 91 Ohio St.3d 89, 90 (2001). "The claimant bears the burden of proving entitlement to compensation." *State ex rel. Koepf v. Indus. Comm.*, 10th Dist. No. 18AP-753, 2019-Ohio-3789, ¶ 6, citing *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56, 57 (1998).

{¶ 43} The Supreme Court of Ohio has recognized that a claimant "may qualify for a total loss of use even when the body part retains some residual function." *State ex rel. Varney v. Indus. Comm. of Ohio*, 143 Ohio St.3d 181, 2014-Ohio-5510, ¶ 16, citing *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166. In order to qualify for loss of use compensation pursuant to R.C. 4123.57(B), " 'a claimant must demonstrate with medical evidence a total loss of use of the body part at issue for all practical purposes.' " *Koepf* at ¶ 6, quoting *Varney* at ¶ 16, citing *Alcoa Bldg. Prods.* Furthermore, the claimant must demonstrate the loss of use is permanent and that a causal relationship exists between the allowed occupational injury and the alleged loss of use. *Id.* at ¶ 7.

## C. Application

{¶ 44} GMS argues the commission erred in awarding loss of use compensation pursuant to R.C. 4123.57(B) because the only medical evidence upon which the SHO specifically relied, namely the October 13, 2021 addendum report of Dr. Hartwig, was based on an incorrect legal standard for evaluating loss of use of a thumb. GMS argues Dr. Hartwig improperly based his conclusion on Industrial Commission Adjudication Memo F3 ("Memo F3"), which applies only to claims for loss of use of a finger, not a thumb.

{¶ 45} Memo F3, which is captioned "Ankylosis of Finger Joints," provides as follows: "The injured worker is entitled to an award for total loss of use of a finger when the hearing officer finds that the injured worker suffers ankylosis of the proximal interphalangeal ("PIP") joint of a finger. In other words, ankylosis of the joint below the middle phalange is a loss of more than the middle and distal phalanges of the finger." (Supp. Stip. at 105.) The memo contains a note referring to R.C. 4123.57 and citing to *State ex rel. Glower v. Indus. Comm.,* 10th Dist. No. 86AP-1026, 1988 WL 92441 (Sept. 1, 1988).[2] (Supp. Stip. at 105.)

{¶ 46} In *Riter*, the Supreme Court of Ohio considered the different requirements for demonstrating loss of use under R.C. 4123.57(B) between fingers and the thumb. Specifically, the court considered whether the claimant's lack of range of motion in the IP joint of the thumb due to ankylosis entitled the claimant to compensation for loss of the whole thumb. In arguing for entitlement to compensation, the claimant specifically pointed to a memorandum from the commission which awarded compensation for a full finger loss when the PIP joint of the finger was ankylosed and argued that consistency demanded the same award when the thumb's IP joint was ankylosed.

{¶ 47} In analyzing the question presented, the court in *Riter* extensively examined the "special properties" of the thumb, noting that "[t]he thumb is the key to grasping and gripping." *Id.* at 92. The court stated that "[t]he thumb's special properties derive from two sources: (1) the metacarpal bone, which proceeds from the metacarpophalangeal joint

---

[2] In *Glower*, the court considered whether the commission abused its discretion when it concluded that the claimant's ankylosis of the PIP joints in the middle, ring, and little fingers of her left hand did not constitute a loss of more than the middle and distal phalanges of those fingers. *Glower* did not consider loss of use of the thumb due to ankylosis.

at the thumb's base, down towards the wrist, and (2) the metacarpocarpal joint at the base of the hand near the wrist." *Id.* Based on the special properties of the thumb, the court found that "the thumb is truly unique" and, therefore, "*evaluating it under standards directed at the fingers just doesn't work.*" (Emphasis added.) *Id.* at 93. Because the "thumb's uniqueness and utility lies in the metacarpal bone and metacarpocarpal joint," the court found that "to say that ankylosis of the IP joint makes the thumb totally useless is wrong." *Id.* As a result, the court concluded the claimant was not entitled to compensation under R.C. 4123.57(B) for loss of use of the whole thumb. The court also found it was not a violation of equal protection to deny total loss of use for the thumb's IP joint while awarding it for the PIP joint in the fingers because the injuries "are different and have different effects on digit use and disability." *Id.*

{¶ 48} This court has previously considered the correct standard for examining a claim for loss of use of a thumb due to ankylosis under R.C. 4123.57(B) in *Rodriguez.* In that case, the commission did not make a finding regarding whether ankylosis rendered more than one-half of the thumb useless. Instead, the commission found that, while the claimant had shown ankylosis, the claimant had not met the requirement of uselessness of the finger based on a medical report in which the doctor opined that the claimant had some range of motion in the thumb and the thumb was not useless. The court found the commission did not apply the correct standard under R.C. 4123.57(B) where ankylosis was proven, stating:

> The statute provides that the loss of more than one-half of a thumb is equal to the loss of the whole thumb, and it requires payment where ankylosis renders a thumb, or any part of the thumb, useless. Together, these provisions require the commission, where ankylosis is proven, to determine whether a claimant has lost more than half the use of a thumb, not just whether a thumb is "useless," in order to determine whether a total loss has occurred.

*Rodriguez,* 2009-Ohio-4834, at ¶ 6. Because the commission did not expressly find that the claimant had lost more than half the use of the thumb, the court granted a writ of mandamus ordering the commission to vacate its order denying scheduled-loss compensation and to reevaluate the application in accordance with the correct standard.

{¶ 49} In *State ex rel. Woodhull v. Indus. Comm.*, 10th Dist. No. 10AP-821, 2011-Ohio-4921, this court reviewed a commission order denying a claimant's motion for loss of use of the whole thumb under R.C. 4123.57(B). In denying the claimant's motion, the commission relied on a doctor's report which applied an incorrect legal standard. The court noted that the commission articulated the correct legal standard in its decision, but did not recognize the doctor's use of an incorrect legal standard. The commission argued before this court that there was additional evidence in the record to support its decision, noting a second doctor's report showing that the claimant's thumb was fully ankylosed at that time. The court found, however, that "[a]nkylosis alone is not determinative," pointing out that the second report "does not discuss whether [the claimant] has suffered a greater-than-fifty-percent loss of her thumb." *Id.* at ¶ 7. Applying the decision of the Supreme Court of Ohio in *State ex rel. Kroger Co. v. Johnson*, 128 Ohio St.3d 243, 2011-Ohio-530, the court found that because the doctor who applied the incorrect standard "might have reached a different conclusion if he had realized that the loss need only be greater than 50 percent, and not a total loss," the court granted a writ of mandamus returning the matter to the commission for further consideration. *Woodhull* at ¶ 10.

{¶ 50} This case bears marked similarities to *Woodhull*. Here, the commission, through its SHO, specifically relied on a single medical report, the October 13, 2021 addendum report of Dr. Hartwig, in support of its conclusion that Ford was entitled to an award of compensation for total loss of use of the left thumb pursuant to R.C. 4123.57(B). Akin to the claimant's position in *Riter*, Dr. Hartwig relied on a commission memorandum pertaining to fingers in reaching his conclusion regarding loss of use of the thumb. Specifically, Dr. Hartwig stated in his report: "I do agree with Dr. Ghanma that the client did have a total fusion of the metacarpalphalangeal joint. Therefore, *according to Memo 3 of the hearing officer*, if this joint is ankylosed then it would actually render the entire distal portion of the thumb of any purposeful or functional use as well." (Emphasis added.) (Stip. at 36.) No party disputes that Dr. Hartwig was referring to Memo F3 in stating "Memo 3 of the hearing officer" or that Memo F3 pertains only to claims for loss of use of a finger, not the thumb. Most importantly, Dr. Hartwig did not properly address the question of "whether, where ankylosis is proven, 'a claimant has lost more than half the use of a thumb.' " *Woodhull* at ¶ 6, quoting *Rodriguez* at ¶ 6. Thus, as

in *Woodhull*, the report relied upon by the SHO was based on an incorrect legal standard and, therefore, does not constitute some evidence upon which the SHO could rely in reaching its conclusion that Ford demonstrated a total loss of use of the left thumb due to ankylosis under R.C. 4123.57(B).

{¶ 51} The commission argues that in the "report of PA-C Catalano dated May 12, 2021, she clearly stated that Ford's primary problem is pain and loss of range of motion in the left thumb" and that "Ford's loss of range of motion in the left thumb constitutes sufficient evidence to support that there is an absence of movement." (Comm. Brief at 10.) This, however, does not address the correct legal standard in answering the question of whether Ford has lost more than half the use of his thumb. *See Woodhull* at ¶ 7. Nor does the commission specifically point to other evidence in the record applying the correct legal standard in support of its determination.

{¶ 52} In addition to Dr. Hartwig's October 13, 2021 addendum report, the SHO also cited to *Rodriguez* and a "visual inspection of [Ford's] left hand and thumb, as well as all evidence and testimony presented at the hearing." (Stip. at 85.) While *Rodriguez* provides the correct standard to apply when considering a claim for loss of use of a thumb due to ankylosis, this citation does not constitute some evidence to support the loss of use determination. As in *Woodhull*, the SHO, despite referring to the correct legal standard, did not recognize that Dr. Hartwig applied the incorrect legal standard. Furthermore, no party contends that a hearing officer's visual observation of a medical condition at a hearing constitutes some evidence upon which the commission could rely in reaching its determination regarding loss of use. Indeed, as previously noted, a claimant must demonstrate the loss of use using medical evidence in order to qualify for compensation under R.C. 4123.57(B). *Koepf* at ¶ 6. *See generally State ex rel. Fries v. Admr., Bur. of Workers' Comp.*, 10th Dist. No. 01AP-721, 2002-Ohio-3252, ¶ 13 (stating that "[w]hile the commission may properly choose between competing or conflicting medical views, it may not create a period of disability out of whole cloth"); *Yellow Freight*, 81 Ohio St.3d at 58 (stating that "[w]ithout medical evidence, the commission has no basis to determine the cause of a medical condition -- it simply does not have the expertise").

{¶ 53} There is nothing in the record, including the SHO's order, reflecting that any additional medical evidence was provided at the hearing and relied on by the SHO to

support the loss of use determination. Rather, the only medical evidence specifically relied upon by the SHO was the October 13, 2021 report of Dr. Hartwig. Having found that this report does not constitute some evidence on which the commission could rely, the magistrate concludes the SHO's order was not supported by the medical evidence required to award loss of use compensation under R.C. 4123.57(B). In the absence of some evidence, the commission abused its discretion in making such an award.

{¶ 54} Therefore, based on the foregoing, GMS has demonstrated a clear legal right to the requested relief, that the commission is under a clear legal duty to provide such relief, and the absence of an adequate remedy in the ordinary course of the law. Consistent with *Woodhull*, a writ of mandamus remanding the matter to the commission for further consideration is appropriate.

## D. Conclusion

{¶ 55} Accordingly, it is the decision and recommendation of the magistrate that a writ of mandamus should be granted vacating the commission's February 15, 2022 order awarding compensation for loss of use under R.C. 4123.57 and remanding the matter to the commission for further consideration.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.